Philip D. Robben
Taraneh J. Marciano
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
(212) 808-7897 (Facsimile)

*Attorneys for Petitioner/Plaintiff*
*Weston Capital Advisors, Inc.*

**ECF CASE**

**13 CV 6945**

**RECEIVED**
OCT - 1 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESTON CAPITAL ADVISORS, INC., <br><br>             Petitioner/Plaintiff, <br><br>    -against- <br><br> PT BANK MUTIARA, TKB, <br><br>             Respondent/Defendant. | Civil Action No. <br><br> **VERIFIED PETITION FOR RECOGNITION OF A FOREIGN JUDGMENT** |

1.      Petitioner/Plaintiff Weston Capital Advisors, Inc. ("Weston"), by and through its attorneys, Kelley Drye & Warren LLP, for its Verified Petition seeking recognition pursuant to the Uniform Foreign Country Money-Judgments Recognition Act, as codified in Article 53 of New York's Civil Practice Law and Rules ("CPLR"), of a judgment rendered by the Supreme Court of Mauritius–Commercial Division on February 15, 2013 in favor of First Global Funds Limited PCC ("FGFL") and against Respondent/Defendant PT Bank Mutiara, TKB ("Bank Mutiara") in the amount of US$18,292,131 plus interest (the "Judgment"), alleges as follows:

## THE PARTIES

2.      Weston is a corporation organized under the laws of the State of Delaware with its principal place of business located at 845 United Nations Plaza, New York, New York 10017. Weston is authorized to do business in the State of New York.

3.      Weston purchased the Judgment from FGFL pursuant to a Purchase and Sale Agreement dated September 30, 2013. Weston, therefore, has all rights, title, and interest to the Judgment and is entitled to seek recognition of the same. (A true and correct copy of the Purchase and Sale Agreement is annexed hereto as Exhibit 1.)

4.      Upon information and belief, Bank Mutiara is a bank formed under the laws of Indonesia with its principal place of business located in Jakarta, Indonesia.

## JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, is in excess of $75,000.

6.      No personal jurisdiction is required pursuant to CPLR Article 53, Recognition of Foreign Country Money Judgments, for the domestication of foreign country money judgments. *See generally* CPLR § 5305; *Abu Dhabi Commercial Bank PJSC v. Saari Trading, Conftr. & Fin. Servs. Co.*, 36 Misc. 3d 389, 392, 948 N.Y.S.2d 533 (N.Y. Sup. Ct. May 15, 2012); *Lenchysyn v. Pelko Electric, Inc.*, 281 A.D.2d 42, 47 (4th Dep't 2001); *see also* David D. Seigel, 2001 Practice Commentary to CPLR 5305, C5305.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as Weston's investigation reveals that Bank Mutiara has property in this district, in the form of bank accounts, that may be subject to levy in satisfaction of the Judgment. Thus, a substantial part of property that is the subject of the action is situated in this district.

## REQUEST FOR RECOGNITION OF
## WESTON'S JUDGMENT AGAINST BANK MUTIARA

8.      This action arises from a dispute against Bank Mutiara over the bank's failure to return deposits made by FGFL totaling US$15,501,807, which amount had been wire transferred

from FGFL to Bank Mutiara in October 2008 and November 2008. Despite several requests for their return, Bank Mutiara never returned the deposit amount. Thus, FGFL initiated a lawsuit seeking the return of the money.

9.       Mauritius is an independent republic and a member of the Commonwealth of Nations. Under the Constitution and laws of Mauritius, parties to a lawsuit are entitled to due process of law consisting, among other things, of the right: (i) to prior notice of court proceedings concerning their rights or claims against them, (ii) to confront and cross-examine witnesses, (iii) to have their case heard by an impartial court and (iv) to take an appeal from orders and judgments rendered against them. The final court of appeal for civil actions is the Judicial Committee of the Privy Council in England. The Judicial Committee is a judicial body made up of Justices of the Supreme Court of the United Kingdom and other privy counselors who have held high judicial office (including former justices of the Supreme Court of the United Kingdom).

10.       Pursuant to the laws of Mauritius, a Mauritian citizen (including a corporate entity) may sue a foreigner not resident in Mauritius in the courts of Mauritius to adjudicate disputes arising out of a contract entered into with the Mauritian citizen. FGFL, being a corporate entity formed in Mauritius, was competent to initiate its law suit against Bank Mutiara under the Mauritius Civil Code.

11.       To do so, however, under the Courts (Civil Procedure) Act of Mauritius, a Mauritian citizen wishing to sue a foreigner not resident in Mauritius must apply for leave from the Supreme Court before filing the action or serving documents on the non-resident defendant.

12.       Thus, prior to initiating the action against Bank Mutiara in Mauritius, FGFL sought leave from the Supreme Court–Commercial Division to file the case and serve a Plaint

with Summons on Bank Mutiara in Indonesia.  (A copy of FGFL's application pursuant to section 60 of the Courts (Civil Procedure) Act is annexed hereto as Exhibit 2.)

13.    In an order dated December 27, 2012, the Supreme Court-Commercial Division, granted FGFL leave to initiate the action and serve Bank Mutiara (the "December 27, 2012 Order").  The December 27, 2012 Order provided that Bank Mutiara be given at least 20 days after being served to appear in the action.  (A copy of the December 27, 2012 Order issued by Honorable A. Hamuth, a Judge of the Mauritius Supreme Court, is annexed hereto as Exhibit 3.)

14.    On December 28, 2012, counsel for FGFL issued a "Notice of Denunciation" to Bank Mutiara informing the bank that it had to appear before the Supreme Court on January 30, 2013 at 10:00 a.m. in connection with the lawsuit.  Accompanying the Notice of Denunciation were copies of FGFL's application under the Court (Civil Procedure) Act, the December 27, 2012 Order, and a copy of the Plaint and Summons.  (A copy of the Notice of Denunciation, without accompanying enclosures, is annexed hereto as Exhibit 4.)

15.    The Notice of Denunciation and accompanying papers were served on Bank Mutiara by hand on December 28, 2012.  Service was made on Bank Mutiara at its office in Jakarta by an attorney in Indonesia with the law firm of Soemadipradja & Taher.  In connection with service of the Notice of Denunciation, the representatives of Bank Mutiara accepting service on behalf of the bank signed a copy of the December 27, 2012 Order.  (Annexed hereto as Exhibit 5 is a copy of the report of Ms. N.F. Aziizah Soerjadi, S.H. setting out the details of service of the Notice of Denunciation and enclosing a copy of the December 27, 2012 Order with the signatures of the Bank Mutiara representatives that accepted service on behalf of the bank.)

16.    Thus, under the Courts (Civil Procedure) Act of Mauritius, the Supreme Court of Mauritius had jurisdiction over Bank Mutiara.

17.     The Notice of Denunciation called for Bank Mutiara to appear before the Supreme Court on January 30, 2013.  Bank Mutiara failed to appear.  The Supreme Court scheduled the case for trial on February 12, 2013.

18.     On February 8, 2013, after Bank Mutiara had still not appeared in the action, counsel for FGFL issued a second Notice of Denunciation.  The second Notice of Denunciation informed Bank Mutiara of the upcoming trial date and specifically warned Bank Mutiara that the trial would proceed in the bank's absence.  (A copy of the second Notice of Denunciation, without accompanying enclosures, is annexed hereto as Exhibit 6.)

19.     As with the first Notice of Denunciation, a representative of the Soemadipradja & Taher firm personally served the second Notice of Denunciation on Bank Mutiara at its offices in Jakarta.  Also as before, the representatives of Bank Mutiara accepting service on behalf of the bank signed a copy of the papers received by them.  (Annexed hereto as Exhibit 7 is a copy of the report of Mr. Erie Hotman Tobing, S.H., LL.M. setting out the details of service of the second Notice of Denunciation and enclosing a copy of the second Notice of Denunciation with the signatures of the Bank Mutiara representatives that accepted service on behalf of the bank.)

20.     Bank Mutiara did not appear for trial on February 12, 2013.  The trial was held in Bank Mutiara's absence.

21.     The trial was held in open court before a judge of the Supreme Court.  Under the laws of Mauritius, Bank Mutiara's failure to appear did not guarantee FGFL a judgment in its favor.  Rather, FGFL was required to prove its case.

22.     To do so, FGFL called Mr. John Liegey, a director of FGFL with full knowledge of the facts underlying FGFL's claim against Bank Mutiara, to testify and produce the relevant documents.  Mr. Liegey was examined by FGFL's local Mauritian counsel as to each and every

averment made in the Plaint and produced the documentary evidence in support of the Plaint's allegations.

23.    Among other evidence, FGFL presented bank statements, bank wire transfer confirmation advices, and demand letters.  Taken together, along with Mr. Liegey's testimony, this evidence proved that the deposit of US$15,501,807 was actually remitted by FGFL to Bank Mutiara and never returned.  The judge examined all the evidence submitted and requested that FGFL file the same with the Court.

24.    After the presentation of the evidence, FGFL's local Mauritian counsel made closing arguments to the Court asking for the relief FGFL sought.  The Court took the matter under advisement.

25.    On February 15, 2013, the Supreme Court of Mauritius delivered the Judgment against Bank Mutiara for US$18,292,131, representing the total of the US$15,501,807 deposit plus accrued interest thereon in the amount of US$2,790,324.  (A copy of the Judgment is annexed hereto as Exhibit 8.)

26.    Under the applicable regulations of the Civil Code of Mauritius, post-judgment interest accrues at the rate of 8 percent per year unless the parties have agreed to another interest rate.  Here, where there has been no contrary agreement, the 8 percent rate applies.

27.    The rate of interest of 8 per cent per year results in per diem post-judgment interest of US$4,009.23—i.e., [8% ÷ 365 days] x US$18,292,131.  Between February 15, 2013 and September 30, 2013, 227 days elapsed, amounting to total post-judgment interest of US$910,095.21.

28.    Thus, as of September 30, 2013, the Judgment with post-judgment interest stands at US$19,202,226.21, with additional interest of $4,009.23 accruing each day.

29.    According to the laws of Mauritius, appeals from judgments and decisions of the Supreme Court composed of one Judge only are taken to the Court of Civil Appeal. The Court of Civil Appeal is a division of the Supreme Court that hears and determines all appeals from the decisions of the Supreme Court sitting as a court of first instance when composed of one Judge only. It typically hears cases in panels of two or three judges as the Chief Justice may decide.

30.    Under the Mauritius Courts Act 1945, parties to a lawsuit must file an appeal in the Registry within 21 days from the date of the order, decision or judgment entered. Thus, Bank Mutiara's appeal from the Judgment was required to be filed with the Registry no later than March 8, 2013.

31.    Bank Mutiara did not timely file an appeal on or before March 8, 2013, nor at any time thereafter, and has not otherwise challenged the Judgment.

32.    Thus, pursuant to the laws of Mauritius, the Judgment is now a final, conclusive, and enforceable judgment of the Supreme Court.

33.    All procedures in the Supreme Court proceeding against Bank Mutiara strictly complied with the laws of Mauritius. The Judgment rendered in that proceeding in favor of FGFL was, therefore, validly obtained and did not in any way result from any illegal or fraudulent act or omission.

34.    FGFL took action to enforce the Judgment in Mauritius. On August 7, 2013, the Master and Registrar of the Supreme Court issued a Writ of Enforcement. A Writ of Enforcement serves two purposes under the laws of Mauritius. First, a Writ of Enforcement is a judgment enforcement mechanism that permits the seizure of a judgment debtor's property in Mauritius for the benefit of the judgment creditor. Second, it suspends all or any time bar or

lapsing of a judgment delivered by the Supreme Court. (A copy of the Writ of Enforcement is annexed hereto as Exhibit 9.)

35.     Bank Mutiara has not satisfied the Judgment voluntarily. In addition, because Bank Mutiara does not have any known assets in Mauritius, FGFL has been unable to obtain satisfaction of the Judgment by means of the Writ of Enforcement.

36.     None of the grounds for non-recognition set forth in CPLR § 5304 exist with respect to this Petition.

37.     This Petition satisfies all the requirements of Article 53 of the CPLR.

**WHEREFORE**, Weston prays that:

38.     This Court enter an Order pursuant to New York's Uniform Foreign Money Judgment Recognition Act, codified in New York's CPLR Article 53, recognizing and confirming the Judgment as a judgment of this Court.

39.     This Court enter judgment against Bank Mutiara in an amount not less than US$19,202,226.21 plus accrued interest in the amount of $4,009.23 per day from October 1, 2013 until the date of judgment entered by this Court.

40.     This Court grant Weston any and all other relief that it deems just and proper.

DATED:      New York, New York
            October 1, 2013

KELLEY DRYE & WARREN LLP

By: _____
            Philip D. Robben
            Taraneh J. Marciano
        101 Park Avenue
        New York, New York 10178
        probben@kelleydrye.com
        tmarciano@kelleydrye.com
        (212) 808-7800
        (212) 808-7897 (Facsimile)

*Attorneys for Petitioner/Plaintiff*
*Weston Capital Advisors, Inc.*

## VERIFICATION

**JOHN R. LIEGEY** declares, pursuant to 28 U.S.C. § 1746, that:

1. I am the Chairman and Chief Executive Officer of Plaintiff/Petitioner Weston Capital Advisors, Inc. ("Weston").

2. I am authorized to make this Verification on behalf of Weston.

3. I have read the foregoing Verified Petition for Recognition of a Foreign Judgment and can attest that the contents thereof is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ **September 30, 2013** _____

_____
**JOHN R. LIEGEY**