```
                                          USDC SDNY
UNITED STATES DISTRICT COURT              DOCUMENT
SOUTHERN DISTRICT OF NEW YORK             ELECTRONICALLY FILED
------------------------------------X     DOC #: _____
                                    :     DATE FILED: 9-8-15
WESTON CAPITAL ADVISORS, INC.,      :
                                    :
                      Plaintiff,    :
                                    :     13 Civ. 6945 (PAC)
       -against-                    :
                                    :
PT BANK MUTIARA, TKB,               :     OPINION & ORDER
                                    :
                      Defendant.    :
                                    :
------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant PT Bank Mutiara TBK ("Bank Mutiara") moves to (1) expand the Court's prior contempt order to cover non-parties John Liegey and the remaining Weston entities,[1] and (2) impose sanctions on the contemnors. Since March 19, 2014, Plaintiff Weston Capital Advisors, Inc. ("WCAI") has been in contempt of the Court's November 19, 2013 order for failing to return approximately $3.6 million. The Court determines that there is no distinction between WCAI, John Liegey ("Liegey"), and the remaining Weston entities. Accordingly, Bank Mutiara's request to expand the contempt order is GRANTED and the Court imposes escalating sanctions to secure compliance with the Court's November 19, 2013 order.

## BACKGROUND

In October 2013, the Court granted WCAI's *ex parte* petition to recognize a Mauritian judgment against Bank Mutiara under Article 53 of the New York Civil Practice Law and Rules.

---

[1] The remaining Weston entities are: Weston International Capital Management (Luxembourg) S.A.; Weston International Capital (Mauritius) Ltd.; Weston International Capital Ltd.; Weston Capital Services Ltd.; First Capital Management Ltd.; First Global Funds Ltd. PCC; Weston International Investments Limited; Arlington Assets Investments Ltd.; Weston International Asset Recovery Co. Ltd.; and Weston International Asset Recovery Corporation Inc.

1

*See* Dkt. No. 1. The Court froze Bank Mutiara's assets in Wells Fargo and Standard Chartered and issued a turn-over order, allowing WCAI to collect $3.6 million in satisfaction of the Mauritian judgment. *See* Dkt. Nos. 15 & 16.

On November 19, 2013, the Court vacated its order recognizing the Mauritian judgment because WCAI failed to notify Bank Mutiara of its Article 53 petition. *See* Dkt. No. 37. The Court ordered WCAI to return all funds collected within three days and noted that when the funds were returned WCAI could renew its petition to recognize the Mauritian judgment and Bank Mutiara could oppose the petition. *See id.* But WCAI failed to return the funds and its attempts to modify the order and repay the funds with bonds were rejected by the Court. *See* Dkt. No. 52, 1 ("Weston's proposal falls well short of satisfying the Court's order to remit $3.6 million that Weston recovered.").

On March 19, 2014, the Court held WCAI in contempt of the Court's "clear and unambiguous" November 19, 2013 order directing the return of funds. Dkt. No. 63, 2; *see Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). The Court, however, declined to hold non-parties Liegey and the Weston entities in contempt. *See* Dkt No. 63. Following a hearing on July 15, 2014, the Court granted Bank Mutiara's discovery request for an "investigation into any complicit role that John Liegey or other Weston affiliates have played in WCAI's contempt." Dkt. No. 85, 2.

Bank Mutiara now moves for an order expanding WCAI's contempt to include Liegey and the remaining Weston entities and requests that the Court impose escalating sanctions on the contemnors. On June 17, 2015, the Court had an evidentiary hearing and heard testimony from Liegey, the majority shareholder and director of the Weston entities, and Jabir Udhin, a minority shareholder of the Weston entities.

## DISCUSSION

### 1. The Court expands the contempt order to include non-parties Liegey and the remaining Weston entities

"A nonparty respondent may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance or if it is legally identified with that party." *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 684 (S.D.N.Y. 1996). Here, Liegey and the remaining Weston entities both abetted WCAI's noncompliance and also legally identify with WCAI.

*A. Liegey and the Weston entities abetted WCAI's noncompliance with the Court's order*

While WCAI was incorporated in Delaware and licensed to do business in New York, it is in fact little more than a name Liegey and his foreign Weston entities use to litigate in the United States. Its purpose was to petition the Court to recognize Weston's Mauritian judgment. Although it obtained a favorable judgment from the Court, WCAI never took possession of the attached funds for it does not have a bank account. *See* Tr. 95:03–09. Instead, the funds were directed to Weston International Capital Limited ("WICL") in Mauritius. *See* Tr. 85:14–16 ("[The Order] said, 'pay as directed.' Kelley Drye asked us who to pay, and we said pay WICL in Mauritius. WCAI didn't have a bank account here."). From there, the funds were dispersed throughout the Weston network before vanishing, leaving WCAI—the only party before the Court—claiming an inability to comply with the Court's order to return the funds.

Liegey, at the helm of all Weston entities, was the instigator of this "now you see it; now you don't" act. He was fully aware of the Court's order to return the funds, but instead considered the funds to be "absolutely designated for bills that were already in place," Tr. 91:08–09, and simply ignored the Court's order. *See* Tr. 100:17–18 ("I knew that there was an order,

yes, sir, and I did not return the funds."). The calculated decision not to comply with the Court's order was also confirmed by testimony from Jabir Udhin:

> Mr. Marks: So you think that [Weston International Investments Limited] should have to return the funds to the court?
>
> Mr. Udhin: Yes.
>
> Mr. Marks: But it didn't, did it?
>
> Mr. Udhin: No, it did not. As I said, we had -- there was a bankruptcy risk. So we had to pay its operation to stay in formation.
>
> Mr. Marks: So you chose to survive rather than repay the court?
>
> Mr. Udhin: Correct. It's a hardship.

Tr. 45:07–15. After the funds were fully dispersed and spent, the Weston entities returned to their "extremely illiquid position," Tr. 81:11. *See* Tr. 18:06 ("In Mauritius [the Weston entities] all have less than $100.").

Liegey used the amorphous structure of the Weston entities to keep the funds out of WCAI's control. Liegey and, thereby, the entire Weston group facilitated WCAI's noncompliance with the Court's order. Accordingly, the Court's contempt order is expanded to cover Liegey and the remaining Weston entities.

### B. *Liegey and the Weston entities also legally identify with WCAI*

The Court has no hesitation piercing the Weston corporate veil and concluding that WCAI, Liegey, and the remaining Weston entities are single entity under New York law. *See New York State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (veil-piercing is appropriate where the moving party shows: "(1) the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent; (2)

4

the parent company exploits its control to 'commit fraud or other wrong'; and (3) the [moving party] suffers an unjust loss or injury as a result of the fraud or wrong" (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991))).

First, all Weston entities are "mere instrumentalities" of Liegey. *See Passalacqua*, 933 F.2d at 139. Corporate formalities are typically ignored:[2] each entity has "the same board of directors[] [s]o for each individual company it was not a requirement . . . to have separate board meetings for each entity." DEX J, 53:02–06. Furthermore, all Mauritius-based Weston entities operate from the same office at First Floor, Cyber Tower 1, Ebene, Republic of Mauritius. Tr. 33:02–11. The financial situation of the Weston entities also demonstrates that they are instrumentalities of Liegey. As noted above, the American-based entities do not have bank accounts and the Mauritian-based entities each have under $100. *See* Tr. 18:06. The only entity with funds is Weston Capital Services ("WCS"), "the operating company in England personally for Mr. John Liegey." Tr. 46:10–11. But WCS funds are not just for Liegey's personal expenses; Liegey uses WCS funds to pay for Weston's legal fees, Weston's employee salaries, and Weston's expenses. Tr. 45:19–49:20. In addition to the undercapitalization and mixing of funds, Liegey and the Weston entities also guarantee one another's debts. *See, e.g.*, PEX 7 (a loan term sheet listing Weston International Asset Recovery Company Limited as "Obligor"; Weston International Capital Limited as "Guarantor"; and John R. Liegey as "Limited Guarantor"). Finally, Liegey's business practices illustrate that all of the Weston entities are Liegey's instrumentalities. There has never been a business dispute between the Weston entities and at no point has a Weston entity made a suggestion or a business proposition to another Weston entity that was rejected. Tr. 34:15–35:12. Moreover, the Weston entities do not operate at arm's

---

[2] However, some Weston entities observe the limited financial formalities necessary to avail of the 3% tax-rate in Mauritius. *See* Tr. 8:03–22.

length—Liegey frequently represents both sides in inter-Weston—or, *intra*-Weston— transactions and has never sought a fairness opinion from an independent party. *See, e.g.*, PEX 7 (Liegey providing an "Authorized Signature" on behalf of Weston International Asset Recovery Company Limited, Weston International Capital Limited, and in his personal capacity); *see also* Tr. 104:15 (despite advising $2.2 billion of portfolios, Liegey "[didn't] think [he] could afford a fairness opinion").

Next, Liegey and the remaining Weston entities exploited their amorphous corporate structure to ensure WCAI never had control of Bank Mutiara's funds, enabling WCAI to resist or avoid any judgment from the Court. *See Passalacqua*, 933 F.2d at 138 ("[T]he control must be used to commit a fraud or other wrong that causes plaintiff's loss" (citation omitted)). While WCAI spent over a year challenging the Court's orders (knowing full-well that it lacked the capacity to ever comply), WCS spent over $800,000 of Bank Mutiara funds on Liegey's $10,000-a-month Manhattan apartment, Tr. 110:11–12; his $20,000-a-month London apartment, DEX J, 18:07–08; his $18,000-a-month salary, Tr. 102:17–19; as well as almost $200,000 in payments to his family, *see* DEX S. Liegey, therefore, exploited his control over the Weston entities to enable him to reap the benefits of the $3.6 million windfall while thumbing his nose at the Court's orders.

Finally, the injury here is obvious. *See Morris v. New York State Dept. of Taxation and Fin.*, 82 N.Y. 2d 135, 141–42 (N.Y. 1993) ("[D]omination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required"). On November 19, 2013, the Court ordered WCAI to refund approximately $3.6 million to Bank Mutiara since the funds were obtained in violation of Bank Mutiara's due process rights. Over 20 months later, WCAI has yet to comply with the Court's order and Bank Mutiara's funds remain missing.

Accordingly, the Court pierces the Weston corporate veil, treats Liegey and the entire Weston group as a single entity, and expands the contempt order to cover these non-parties.[3]

### C. WCAI's arguments against expanding the contempt have no merit

WCAI opposes Bank Mutiara's motion to expand the contempt order on two grounds; neither have merit. First, WCAI argues that the equitable maxim of unclean hands prevents the relief sought by Bank Mutiara. *See Brennan v. Nassau Co.*, 352 F.3d 60, 63 (2d Cir. 2003) (finding that contempt is "subject to equitable defenses"). Since the Weston entities have an unsatisfied Mauritian judgment against Bank Mutiara, they argue that Bank Mutiara is undeserving of equitable relief. Moreover, WCAI raises concerns about J Trust Co.'s recent acquisition of Bank Mutiara and notes that its attempts to satisfy the underlying judgment in multiple jurisdictions remain frustrated. But Bank Mutiara's status as a creditor in Mauritius does not prevent the Court from expanding the contempt order based on the role Liegey and the remaining Weston entities played in WCAI's contempt.

Next, WCAI argues that Liegey and the remaining Weston entities cannot be held in contempt since the Court's November 19, 2013 order directing WCAI to return the funds did not apply to them. WCAI claims that expanding this order to the non-parties would render the order ambiguous since "[a] clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed who must be able to ascertain from the four corners of the order precisely what acts are forbidden," *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)

---

[3] The Court has personal jurisdiction over Liegey and the remaining Weston entities based on WCAI's contact with New York. *See Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989) ("Under New York law, where a corporate subsidiary is essentially a 'separately incorporated department or instrumentality' of a foreign corporation, the activities of the subsidiary will be attributed to the foreign parent for purposes of determining the parent's amenability to personal jurisdiction in New York." (citing *TACA Int'l Airlines, S.A. v. Rolls Royce, Ltd.*, 15 N.Y. 2d 97 (N.Y. 1965))).

(internal quotation marks and citations omitted). But the Court is not expanding its November 19, 2013 order to the non-parties as they were plainly not covered by the order; rather, the Court expands its March 19, 2014 contempt order to the non-parties because they abetted WCAI's noncompliance and legally identify with WCAI.

### 2. Sanctions are appropriate

"When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) (citation omitted).

First, the character and magnitude of the harm is significant: $3.2 million of Bank Mutiara's funds were attached in violation of its due process rights. And when the Court vacated the attachment and ordered the return of the funds, the contemnors willfully and knowingly declined to comply with the Court's order. Instead, WCAI—a shell entity with little more than a United States address—litigated the matter over the course of 20 months by challenging the order, moving for the Court to reconsider the order, resisting Court-ordered discovery, and initiating a parallel suit in this District against Bank Mutiara (using another shell entity, Weston International Asset Recovery Corporation, Inc.). Moreover, throughout this litigation, WCAI has employed the same rhetoric concerning Bank Mutiara's business practices in Mauritius to steer the Court's attention away from WCAI's noncompliance:

> The Court: Mr. Greenwald has moved for contempt, and I would like to know why you shouldn't be held in contempt and directed to further again pay the money. Now it's interesting about all these offsets in Mauritius, but, you know, that is not the question here. Go ahead.

> Mr. Manuel: Your Honor, we respectfully disagree.
>
> The Court: I know you do, but I get to define the issues.
>
> Mr. Manual: I understand. But there most certainly is an issue of unclean hands in this case, and Bank Mutiara is and has been widely recognized as a corrupt institution that has systematically defrauded and corrupted creditors and other entities that it has dealt with.
>
> The Court: Not in this matter.

Tr. 59:16–60:05. Such conduct poses severe harm, not just to Bank Mutiara, which was wrongfully deprived of $3.2 million, but to the effectiveness of the Court's orders in general.

Next, the probable effectiveness of a sanction in bringing about compliance is high. The contemnors' continued failure to return the funds is a calculated decision premised on Liegey's view that any sanction imposed "will be in a relatively nominal amount" because:

> the entry of the WCAI judgment against Bank Mutiara was exclusively an error on the part of Kelley Drye, which erroneously proceeded *ex parte* to have the judgment entered by the court. Judge Crotty will be very reluctant to enter a large sanction that would likely run against Kelley Drye, where his brother is a partner.

PEX 8, 10. Based on the evidence obtained through discovery and based on the testimony of Liegey and Udhin, the Court determines that escalating monetary sanctions—imposed jointly and severally on all Weston entities and on Liegey, personally—will bring about compliance with the Court's order. The Court, therefore, imposes sanctions of $1,000 per day, with the daily fine doubling each month until the contemnors comply with the Court's March 19, 2014 order.

Finally, based on the amount of funds still outstanding to Bank Mutiara, the expenses accrued by Liegey and the Weston entities, and the plethora of suits the Weston entities continue to litigate worldwide, the burden imposed by this sanction is not excessive. *See Terry*, 886 F.2d

9

at 1353 (noting that "[a] sanction may, of course, be both coercive and compensatory" and vacating a sanction because it was imposed without any showing of injury or compensable loss). Moreover, Bank Mutiara is directed to submit further briefing regarding the legal fees it incurred in pursing the contempt motions as well as an updated calculation of the amount outstanding, including the interest accrued. *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful." (citation omitted)).

## CONCLUSION

For the reasons above, the Court expands its March 19, 2014 contempt order to non-parties Liegey; Weston International Capital Management (Luxembourg) S.A.; Weston International Capital (Mauritius) Ltd.; Weston International Capital Ltd.; Weston Capital Services Ltd.; First Capital Management Ltd.; First Global Funds Ltd. PCC; Weston International Investments Limited; Arlington Assets Investments Ltd.; Weston International Asset Recovery Co. Ltd.; and Weston International Asset Recovery Corporation Inc. The Court also imposes sanctions of $1,000 per day jointly and severally on the contemnors, with the daily fine doubling each month until the contemnors comply with the Court's March 19, 2014 order.

Dated: New York, New York  
       September 8, 2015

SO ORDERED

*/s/ Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge