UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
WESTON CAPITAL ADVISORS, INC.,

                           Plaintiff,                        13-CV-6945 (PAC)

      v.

PT BANK MUTIARA, TBK,

                           Defendant.
-------------------------------------------------------x


**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPLEMENT RECORD,
CONDUCT FURTHER PROCEEDINGS,
AND VACATE THE EXPANDED CONTEMPT ORDER AND SANCTIONS**


Charles B. Manuel, Jr. (CM3020)
MANUEL & ASSOCIATES, LLP
1 Penn Plaza, Suite 2527
New York, New York 10119
T: (212) 792-0044
F: (212) 563-7108
CBM@Manuel-law.net

Attorneys for Plaintiff
Weston Capital Advisors, Inc.


December 2, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WESTON CAPITAL ADVISORS, INC.,

                         Plaintiff,                         Civil Action No. 13-cv-6945 (PAC)

      - against -

PT BANK MUTIARA TBK

                         Defendant,
------------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPLEMENT RECORD,
CONDUCT FURTHER PROCEEDINGS,
AND VACATE THE EXPANDED CONTEMPT ORDER AND SANCTIONS**

Plaintiff Weston Capital Advisors Inc. (WCAI) submits this memorandum in support of its motion to supplement the record, conduct further proceedings, and vacate the expanded contempt order and sanctions, including the award of approximately $600,000 in legal fees to Bank Mutiara's counsel, Quinn Emanuel Urquhart & Sullivan, LLP.

**PRELIMINARY STATEMENT**

This memorandum focuses on the issue of the unclean hands of PT Bank Mutiara Tbk (Bank Mutiara) which, as shown in several prior submissions in this case, is the most corrupt bank in the most corrupt country in South East Asia. The picture with respect to unclean hands has now come dramatically into focus, and we respectfully submit that the time has come for the Court to send this criminal enterprise packing and vacate the contempt order against WCAI and nine other contemnors, including the immense sanction that the Court previously imposed.

**BACKGROUND**

A. **Factual Background**

The factual background of this matter is set forth in detail in the accompanying declaration of Charles B. Manuel, Jr. and the exhibits thereto.

1

### B. Procedural Posture

As seen in the Manuel Declaration, the new matters relating to Bank Mutiara's unclean hands came to our attention only after briefing was completed in the Second Circuit. The matter was raised briefly by the undersigned at oral argument in the Second Circuit, followed by a detailed motion for supplementation of the record and remand for reconsideration of the issue.

Bank Mutiara responded to the motion in the Second Circuit with (i) opposition to the motion, and (ii) a cross-motion for sanctions against the undersigned. The Second Circuit denied the cross-motion for sanctions and with respect to the motion for supplementation of the record and remand for reconsideration of the issue, the Second Circuit stated that, "Appellants' motion to supplement the record and for remand is DENIED, without prejudice to the district court informing this Court that it would grant a motion to supplement the record and reconsider its order awarding attorneys' fees under Federal Rule of Appellate Procedure 12.1."

## DISCUSSION

There is no dispute that a party demanding an order of contempt must come to the court with clean hands. We repeat our discussion of this matter from our Second Circuit brief:

> A finding of contempt is an equitable remedy under Second Circuit law, and "subject to equitable defenses...." *Brennan v. Nassau County*, 352 F.3d 60, 63 (2d Cir. 2003). The "unclean hands" doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [alleged contemnor]." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945); *Trustees of the Buffalo Laborers' Pension Fund v. Accent Stripe, Inc.* 2007 WL 1540267 (W.D.N.Y. 2007).
>
> An order of contempt is in the nature of an equitable remedy and the guiding doctrine is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of a court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abetter of iniquity.'

2

> *Bein v. Heath*, 6 How. 228, 247, 12 L. Ed. 416. Thus, while 'equity does not demand that its suitors shall have led blameless lives,' *Loughran v. Loughran*, 292 U.S. 216, 229, 54 S. Ct. 684, 689, 78 L. Ed. 1219, as to other matters it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 147, 78 L. Ed. 293; *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387, 64 S. Ct. 622, 624, 88 L. Ed. 814.
>
> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. General Excavator Co., supra*, 290 U.S. 245, 246, 54 S. Ct. 147, 148, 78 L. Ed. 293. Accordingly, one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor

(See WCAI Opening Brief in Second Circuit at 26-28, repeating discussion of authorities previously presented to the District Court.)

The issue of unclean hands was briefly in this Court at oral argument as to whether the matters then raised by WCAI, demonstrating some of Bank Mutiara's extensive history of unlawful conduct, were sufficiently related to the matter at issue before the court::

> Mr. Manuel: I understand. But there most certainly is an issue of unclean hands in this case, and Bank Mutiara is and has been widely recognized as a corrupt institution that has systematically defrauded and corrupted creditors and other entities that it has dealt with.  The Court: Not in this matter.

Now, however, we have the matters set forth in the Manuel Declaration, which unquestionably are very closely related to the matter at issue in this case.  Specifically, at precisely the time that Bank Mutiara was pressing its motion for expanded contempt and sanctions, it was paying $8 million – an amount more than double the amount that was to be returned by WCAI – to its attorneys or to another creditor pursuant to a purported settlement in the LCIA arbitration that took place more than 18 months after WCAI and WIARCO obtained their judgments.

In the process, Bank Mutiara and its counsel engaged in the purest form of fraud. They deceived the public in their financial statements, asserting that they had simply settled a "repo

3

contract" case, when they in fact were dividing the proceeds of one of the most massive schemes of theft and money laundering that their own expert witness in the LCIA arbitration had ever seen.

And that fraud worked to perfection with – guess who? – the largest creditors of Bank Mutiara – FGFL/WCIA and WIARCO – whose senior executive, John Liegey, believed that the settlement of the "contract case" signaled an intention of Bank Mutiara and its new owner, J Trust of Japan, to resolve old contract claims, the largest of which by far were those of FGFL and WIARCO. Lulled into this false sense of comfort and security, the plaintiff herein did not seek to intrude upon the purported LCIA settlement between Bank Mutiara and the Federal Bank of the Middle East.

Bank Mutiara did not fairly disclose that (1) it was taking $8 million of laundered money and not paying it to its judgment creditors FGFL and WIARCO, (2) but instead was forwarding it to Quinn Emanuel, at almost exactly the time that Quinn Emanuel was taking the deposition of John Liegey, (3) in an effort to obtain an expanded contempt order against Liegey for the nonpayment of an amount less than half of the amount that Bank Mutiara had stolen, laundered and delivered to its attorneys, and (4) it was acting in conjunction of those attorneys every step of the way. If the truth had been told, WCAI could easily and successfully have rushed to the courts in London to freeze the $8 million in satisfaction of a small part of their judgment, $3.6 million of which then could have been forwarded to this Court. It is almost impossible to think of unlawful, inequitable, fraudulent, criminal conduct that could be more closely related to the matter before this Court.

The representation by Bank Mutiara's counsel that the settlement of the London arbitration involved the transfer of $8 million to their firm and the turnover of that money to FBME Bank Limited, the claimant in the arbitration which Quinn Emanuel was concurrently representing in other matters, would be easily documented with (1) the October 16, 2014 Settlement Agreement, (2) the documentation (on both sides) of the December 2, 2014 transfer

4

of £5 million/$8 million from Bank Mutiara to Quinn Emanuel's account in London, (3) the alleged transfer of the same amount from the Quinn Emanuel client funds account to the account of FBME Bank Limited, and (4) any subsequent transfer from FBME Bank Limited to a third party, such as a Saab-controlled entity or a law firm. This is particularly important because counsel's assertion has been directly contradicted by the current and former Special Administrators of FBME Bank Limited, who have stated that no such payment was ever received. (See Exhibits 4 and 5 to the Manuel Declaration.) At a minimum, in order to fully explore the criminal theft and money laundering that has now been exposed, Plaintiff should at last be permitted to obtain some discovery regarding the details of the fraud, theft and money laundering that was carried out by Bank Mutiara and its counsel in connection with the LCIA arbitration.

For our present purposes, it may not matter whether Bank Mutiara and Quinn Emanuel were transferring the laundered money back to FBME Bank Limited or to the pockets of the Saab brothers who had stolen the money in the first place, or even to Quinn Emanuel's own pockets as lawyers. Very simply, the judgments of FGFL/WCAI and WIARCO took precedene over whatever new contract or fraudulent scheme Bank Mutiara or Quinn Emanuel were involved in.

***********************************

The present motion is extremely important, but the pending matter are not urgent for several reaons. First, Bank Mutiara and its owner J Trust have taken the opportunity afforded by this court's contempt orders to remove virtually all assets from this jurisdiction that could have been used for the satisfaction of the WCAI and WIARCO judgments. We are simply not in a huge rush to recover … nothing.

Second, the straight jacket imposed by this Court's stay order and its contempt orders have made it virtually impossible for WCAI to have any prospect of raising the money to be returned to this Court or to Standard Chartered Bank. Thus, unless the stay order and at least

the punitive component of the expanded contempt order are lifted, nothing is going to happen that will open the record in this case for the recognition and enforcement hearing that should have taken place at the outset but for the errors of predecessor counsel and this Court.

Third, although we have uncovered a very large amount of information regarding the theft, money laundering and fraud in which Bank Mutiara has engaged, this Court should be permitting additional discovery to take place before ruling on the issue now before it.

Fourth while this Court may have stayed all discovery and other proceedings by plaintiff WCAI, the matters presented to this Court in our papers are under extensive review and investigation by the authorities in a number of forums.  In those forums, we can anticipate that there will be ample discovery, much of which will finally allow us to fill in any blanks to complete the record here.

Fifth, FGFL is currently pursuing litigation in Singapore related to the recognition and enforcement of its Mauritian judgment.  While this New York court may actually never reach those issues – which were the original issues in this proceeding – some guidance regarding the voulidity of the Mauritiion judgments may be obtained when the proceedings are completed in the courts of Singapore.

## **CONCLUSION**

Bank Mutiara and its senior executives in Jakarta and its owners in Tokyo should not be blessed with a contempt order against their adversary.  They should be put in prison for theft , money laundering and fraud.

Quinn Emanuel, which orchestrated much of the proceedings and settlement of the FBME/Bank Mutiara arbitration, certainly took out a large fee in the case -- $8 million perhaps? – and should not be further awarded large fees against its adversaries WCAI *et al*.

WCAI – victimized by the huge fraud, theft and money laundering in London – and nine other contemnors should not continue to be victimized with one of the most vbrutal contempt orders and sanctions in history. They should, instead, be assisted in collecting every possible,

available dollar on the legitimate judgments issued in their favor by a respected English law court from Mauritius.


Dated: New York, New York
December 2, 2016

Respectfully submitted,
<u>*Charles B. Manuel, Jr.*</u>
Charles B. Manuel, Jr. (CM3020)
MANUEL & ASSOCIATES, LLP
1 Penn Plaza, Suite 2527
New York, New York 10119
T: (212) 792-0044
F: (212) 563-7108
CBM@Manuel-law.net

Attorneys for Petitioner
Weston Capital Advisors, Inc.
