**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7140**

WRITER'S INTERNET ADDRESS
**marcgreenwald@quinnemanuel.com**

December 16, 2016

**VIA EMAIL AND ECF**

Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Weston Cap. Advisors, Inc. v. PT Bank Mutiara TBK*, No. 13-cv-6945

Dear Judge Crotty:

We represent Bank Mutiara and write respectfully in response to Weston's December 13, 2016 letter requesting a pre-motion conference regarding its putative motion for recognition of Weston's purported right to setoff its obligations.

The Court should deny Weston's requests to file the motion, and for a pre-motion conference. The proposed motion is Weston's latest attempt to rehash an argument it has already asserted and lost multiple times. Weston provides no justification for allowing it to reassert its setoff argument yet again years after these issues were decided.

Weston repeatedly argued that it was entitled to setoff in opposing Bank Mutiara's motion to hold Weston in contempt. *See, e.g.*, Weston's Post-Hearing Submis'n in Opp. to Mot. for Contempt, Dkt. 142 at 3-5 ("The $3.8 Million Refunding Obligation Has Been Satisfied By An Offset On The Books Of Bank Mutiara And Sustained By The Judgment Of The Supreme Court Of Mauritius"); 4/17/15 Liegey Decl. in Opp. to Mot. for Contempt, Dkt. 126 at 73 ("FGFL and FCML Directors can

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

easily . . . testify in this Court that validly recognized liabilities of Bank Mutiara by their own regulator qualify to offset the Court ordered payment of US$3,871,591.81."). Weston specifically argued that its purported possession of Mauritian judgments against Bank Mutiara justified setoff. *Id.* The Court rejected this argument. Contempt Order, Dkt. 147, at 8-9 (refusing to setoff Weston's obligations on account of purported offsets in Mauritius) (citing 6/17/15 Hr'g Tr. 59:16-25).

Weston again raised this issue at the Second Circuit. Indeed, Weston's claim that it was entitled to setoff was the first argument it raised. *See Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 15-cv-3158 (2d Cir.) (the "Appeal"), Pet'rs' Opening Br., Dkt. 115 at 24-26 ("Point I: The $3.8 Million Refunding Obligation Has Been Satisfied By An Offset On The Books Of Bank Mutiara And Sustained By The Judgment Of The Supreme Court Of Mauritius"), *see also* Pet'rs' Reply Br., Appeal Dkt. 116 at 12-14 (similar). The Second Circuit also rejected this argument. *See* Mandate of 2d Cir., Appeal Dkt. 158 at 4 (finding "the remainder of the arguments set forth by the Weston Entities and Liegey [including the setoff argument] . . . to be without merit.").

Weston does not and cannot explain why the Court should depart from its own ruling, the Second Circuit's, or the law of this case by reconsidering the exact same issue. It is too late for Weston to raise new arguments it failed to put forward in opposing contempt 18 months ago, or on appeal 8 months ago. And if Weston does *not* intend to raise new arguments, the Court need not entertain its motion. Weston also cannot explain why, having defied this Court for over three years, it deserves the extraordinary relief of again challenging this Court's contempt order.[1]

In any event, Weston's argument is plainly illogical. Bank Mutiara denies both that it owes Weston any money and that it was subject to personal jurisdiction in Mauritius such that a default judgment is valid. Permitting Weston to set off its undisputed debt to Bank Mutiara with doubtful

---

[1] Unlike the proposed offset motion, Weston's pending motion regarding supplementing the record on the Fee Order was filed pursuant to language from the Second Circuit.

2

Mauritian claims would circumvent the protections of CPLR Article 53, and effectively grant recognition to those judgments without first permitting Bank Mutiara to present its strong defenses. *See* Order Vacating J., Dkt. 36, at 4 ("What is essential is that 'any kind of judgment obtained in a foreign country must be *sued upon*, thereby establishing a New York judgment, before the judgment debtor's New York property can be used to pay the debt.'") (emphasis in original) (quoting Vincent Alexander, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR § 6201:5). As this Court has previously ruled, an attempt to take property from Bank Mutiara without permitting it to assert its defenses violates due process. Order Vacating J., Dkt. 36, at 4-5. The Court should not permit a procedure to go forward that would deprive Bank Mutiara of its interest in the money taken from it without permitting it to present its defenses.[2]

The Court should not waste further time in permitting this motion, nor should it saddle Bank Mutiara with the uncompensated expense of responding to it. Weston should be denied permission to file its motion, and notified that if it nevertheless chooses to file it, it will be summarily denied without Bank Mutiara's being required to respond.

---

[2] Weston's citation to *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Dem. Repub.*, is unavailing. 10-cv-5256 (KMW), 2016 WL 958640 (S.D.N.Y. Mar. 8, 2016). In that unpublished case, the court found, without analysis, that certain foreign judgments were "conclusive judgments" under CPLR §§ 5302-03, and thus could offset New York debts. *Id.* at *3-4. It did not consider the defenses against "conclusiveness" under CPLR § 5304(a), which include that "the foreign court did not have personal jurisdiction over the defendant." *Id.* *3 n.4. Regardless of whether the defenses under CPLR § 5304(a) were inapplicable or simply never raised, *Thai Lao* does not support that foreign judgments may offset domestic claims when defenses under CPLR § 5304(a) *are* available and have in fact been raised. This is particularly relevant here, as Bank Mutiara's jurisdictional argument is very strong. According to Weston's attorneys, under Mauritian law, "the *only* criteria [*sic*] necessary [for jurisdiction] is the nationality of the Mauritius claimant . . . . This jurisdiction is exercised in relation to *any* contractual relationship whatsoever and wherever the contract has been concluded or executed." Weston Ltr. Ex. 1 ¶ 16 (emphasis added); Ex. 2 ¶ 11 (similar); Ex. 3 ¶ 13 (similar). Jurisdiction on this basis is unacceptable in New York, which prevents recognition of the judgments. *Sung Hwan Co. v. Rite Aid Corp.*, 850 N.E.2d 647, 651 (N.Y. 2006) ("[T]he inquiry turns on whether exercise of jurisdiction by the foreign court comports with New York's concept of personal jurisdiction . . . ."). Weston cannot simply circumvent these protections by attempting to offset its debt without applying CPLR Article 53.

Respectfully submitted,

*/s/ Marc L. Greenwald*

Marc L. Greenwald


cc: Charles B. Manuel, Jr., Esq.; Duncan Levin, Esq. (counsel for Plaintiffs)