UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESTON CAPITAL ADVISORS, INC.,

                Plaintiff,

  -against-

PT BANK MUTIARA TBK,

                Defendant.

No. 13-cv-6945 (PAC)

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO
SUPPLEMENT RECORD, CONDUCT FURTHER PROCEEDINGS,
AND VACATE THE EXPANDED CONTEMPT ORDER AND SANCTIONS**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Marc L. Greenwald
Andrew Marks
Daniel Koffmann
51 Madison Avenue
New York, New York 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
marcgreenwald@quinnemanuel.com
andrewmarks@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Defendant PT Bank Mutiara Tbk*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Contempt Proceedings And Fee Award................................................................2

    B.    Appeal From Contempt Order ..............................................................................3

    C.    Appeal From Fee Order .........................................................................................4

    D.    The November 3, 2016 Hearing............................................................................4

    E.    The Present Motion................................................................................................5

ARGUMENT .................................................................................................................................5

I.    THE COURT SHOULD DENY THE CONTEMNORS' REQUESTS FOR SUPPLEMENTATION OF THE RECORD, RECONSIDERATION, AND FURTHER PROCEEDINGS REGARDING THE FEE ORDER .....................................6

    A.    The Contemnors' Allegations Against Bank Mutiara And Quinn Emanuel Are Unfounded................................................................................................7

    B.    The Contemnors' Allegations Cannot Constitute "Unclean Hands" As A Matter Of Law .................................................................................................9

    C.    The Court Has Rejected This Argument Previously In This Case, And The Contemnors Give No Reason Why It Should Succeed Now ................................11

II.    THE MOTION'S REQUESTS FOR RELIEF FROM THE CONTEMPT ORDER SHOULD BE DENIED ..............................................................................................12

CONCLUSION............................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

### Cases

*Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*,
   149 F.3d 85 (2d Cir. 1998)..................................................................................9

*Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*,
   819 F. Supp. 2d 247, 266 (S.D.N.Y. 2011)...........................................................6

*Henderson v. United States*,
   135 S. Ct. 1780 (2015)..........................................................................................9

*Huber v. Marine Midland Bank*,
   51 F.3d 5 (2d Cir. 1995).......................................................................................12

*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933).........................................................................................9, 10

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945)............................................................................................10

*Toliver v. Cty. of Sullivan*,
   957 F.2d 47 (2d Cir. 1992)....................................................................................6

*Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*,
   No. 15-3158-CV, 2016 WL 3472375 (2d Cir. June 24, 2016).........................3, 11

### Rules / Statutes

Federal Rule of Appellate Procedure 12.1 ..................................................................4

Federal Rule of Civil Procedure 60(b)..............................................................6, 9, 11

Federal Rule of Civil Procedure 62.1 ...........................................................................6

### Other Authorities

12 Moore's Federal Practice 3D (3d ed.)......................................................................6

PT Bank Mutiara, TBK ("Bank Mutiara") respectfully submits this memorandum of law in opposition to the motion ("Motion") that purports to be from Weston Capital Advisors, Inc. ("WCAI"), but must actually be from the other Weston contemnors (collectively, with WCAI, "Weston" or "the Contemnors") to supplement the record, conduct further proceedings, and vacate the expanded contempt order and sanctions.

## PRELIMINARY STATEMENT

The Contemnors' latest effort to peddle conspiracy-theory nonsense should be rejected. Their papers are incoherent, the documents cited do not support the allegations, and their conclusions are flat wrong. While the Contemnors submit an expert report regarding a 2006 transaction involving the then-owners of Bank Century (Bank Mutiara's predecessor), that report has nothing to do with conduct by Bank Mutiara, its present owners, or Quinn Emanuel. There is no "money laundering." Furthermore, even if these wild allegations had a shred of support (which they do not), the allegations would provide no basis to revisit this Court's fee award related to the Weston entities' contempt. For that reason, there is no basis to supplement the record for the Second Circuit (with documents that court has already seen) on the Contemnors' fee appeal.

Besides seeking to supplement the record on appeal, the Contemnors' motion also purports to seek to "vacate the Contempt Order and sanctions." But the Contemnors' jumbled memorandum of law neglects to offer any grounds for this Court to do so. The Court has already ceased the imposition of escalating fines; there is no reason to vacate the Contempt Order that was affirmed on appeal while the Contemnors continue to violate the underlying Court order to return the missing funds to Bank Mutiara. This Court should deny Weston's motion in its entirety.

1

## BACKGROUND

### A. Contempt Proceedings And Fee Award

On November 19, 2013, this Court entered an order vacating its previous judgment against Bank Mutiara and certain turnover orders issued pursuant thereto. Dkt. 36. The Court ordered WCAI "to return to their original source within three (3) business days of the date of this Order any amounts previously recovered by Plaintiff in connection with the enforcement of the October 4, 2013 Judgment." Dkt. 37 at 1.

Weston never returned the approximately $3.6 million it had taken. On March 19, 2014, this Court held WCAI in contempt, Dkt. 63, and on July 16, 2014, it granted Bank Mutiara discovery regarding WCAI's ongoing failure to return Bank Mutiara's money, including "any complicit role that John Liegey or other Weston affiliates have played in WCAI's contempt." Dkt. 85, at 2.

On September 8, 2015, after considering a renewed contempt motion, the evidence obtained in discovery, and the live testimony of Mr. Liegey and another Weston employee, the Court entered an order piercing the veil among each of WCAI, certain Weston affiliates, and Mr. John Liegey, holding each in contempt and imposing escalating fines for failing to return Bank Mutiara's funds. Dkt. 147 (the "Contempt Order").

The Contempt Order also directed Bank Mutiara "to submit further briefing regarding the legal fees it incurred in pursuing the contempt motions." Contempt Order at 10. On September 24, 2015, Bank Mutiara submitted briefing requesting attorneys' fees and attaching its counsel's contemporaneous time records. *See* Dkts. 148, 149. Weston never opposed Bank Mutiara's request for attorneys' fees. On March 16, 2016, the Court granted Bank Mutiara's motion for attorneys' fees in the amount of $598,519.50 against each of the contemnors under the Contempt Order. Dkt. 155 (the "Fee Order").

### B. Appeal From Contempt Order

On October 7, 2015, the contemnors under the Contempt Order appealed the Contempt Order to the Second Circuit. *See* Dkt. 154. On June 24, 2016, the Second Circuit dismissed the appeal filed by WCAI for lack of jurisdiction and affirmed the Contempt Order with respect to the other Contemnors. *See Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, No. 15-3158-CV, 2016 WL 3472375, at *3. (2d Cir. June 24, 2016) (summary order); Dkt. 158 (certified copy of same order). In a footnote, the Second Circuit noted "[i]f there comes a time when the escalating nature of the sanctions or changed circumstances render appellants unable to comply with the contempt order making the sanctions punitive rather than coercive, or if it becomes obvious that sanctions are not going to compel compliance, such that the civil contempt sanctions lose their remedial characteristics and take on more of the nature of punishment, appellants may again petition the district court for relief." *Id.* at *2 n.1 (internal citations and quotation marks omitted).

On July 13, 2016, the Contemnors filed a petition for rehearing of the Second Circuit's summary order. *Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 15-3158-CV (2d Cir.) (the "Contempt Appeal"), Dkt. 178. The Contemnors argued that "at the very moment that Bank Mutiara was seeking expanded contempt and unprecedented sanctions for the delayed return of $3.623 million received by Weston pursuant to the district court's original order, Bank Mutiara was delivering more than $8 million of criminally laundered money into the account of Quinn Emanuel in London and deceiving WCAI and Bank Mutiara's other creditors using fraudulent financial statements." Contempt Appeal Dkt. 178-2 at 2. It further requested "[t]he reopening of the record to include the evidence of Bank Mutiara's money laundering and fraud, through which Bank Mutiara and Quinn Emanuel stole $8 million." *Id.* at 9. The Second Circuit denied the Contemnors' petition. *See* Contempt Appeal Dkt. 185.

### C. Appeal From Fee Order

On April 15, 2016, the Contemnors appealed the Fee Order to the Second Circuit. Dkt. 157. On June 30, 2016, the Contemnors moved the Second Circuit for "a supplementation of the record and a remand to the district court for further proceedings," including reconsideration of the Fee Order. *See Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 16-1178-CV (2d Cir.) (the "Fee Appeal"), Dkts. 44, 46, 49. The Contemnors based their request on Bank Mutiara's purported unclean hands "including the newly discovered information of participation by Quinn Emanuel in the fraud and money laundering of its client." Fee Appeal Dkt. 49, at 3. Bank Mutiara opposed the Contemnors' motion, and cross-moved to dismiss and for sanctions. Fee Appeal Dkt. 61.

On October 20, 2016, the Second Circuit issued an order (i) dismissing WCAI's appeal for lack of jurisdiction, (ii) denying the remaining Contemnors' motion to supplement the record and for remand, and (iii) denying Bank Mutiara's motion to dismiss, and for sanctions. Dkt. 161 (certified copy of Second Circuit's order). In denying the Contemnors' motion to supplement the record and for remand, the Second Circuit indicated that its order was "without prejudice to the district court informing this Court that it would grant a motion to supplement the record and reconsider its order awarding attorney's fees under Federal Rule of Appellate Procedure 12.1." *Id.* at 2.

### D. The November 3, 2016 Hearing

On November 3, 2016, the Court held a status conference in this matter. At the conference, counsel to the Contemnors asked to submit supplemental briefing in support of (i) their inability to satisfy the fines accruing under the Contempt Order, and (ii) their request to supplement the record and seek reconsideration of the Fee Order. *See* Nov. 3, 2016 Hr'g Tr. at 4:1-7 (Mr. Manuel: "What we would like to do is set up a schedule for addressing the two

matters that we believe are appropriately subject for remand here . . . [o]ne is the issue of ability to pay and the other is the issue of the matters raised in connection with the fee appeal and, in particular, our request for reconsideration of the ruling on that regard."); 11:20-22 (The Court: "Then you want to move to reconsider the attorneys' fees?" Mr. Manuel: "Yes, your Honor."). The Court granted the Contemnors' request. *See id.* at 13:14-22.

On November 11, 2016, as stated at the November 3, 2016 hearing and at Bank Mutiara's request, this Court stayed the accrual of daily fines under the Contempt Order and reiterated its numerous prior orders to the Contemnors to comply with the Court's orders. Dkt. 165.

### E. The Present Motion

By this Motion, the Contemnors move to "supplement the record relating to defendant's unclean hands, conduct further proceedings relating thereto, and vacate the expanded contempt order and sanctions." Dkt. 166. In connection with the Motion, Mr. Manuel declares that "Quinn Emanuel was a direct participant [in money laundering] as the arranger and recipient of $8 million of the stolen and laundered funds." Decl. of Charles B. Manuel, Jr., Dkt. 167 (the "Manuel Decl."), ¶ 11. In support of these accusations, Mr. Manuel submits, among other things, an expert report prepared in a separate and confidential arbitration proceeding concerning Bank Mutiara, Manuel Decl., Ex. 1, and Bank Mutiara's public financial statements, *id.*, Exs. 2-3, which are the same documents the Contemnors relied on in their motion before the Second Circuit. *See* Fee Appeal, Dkt. 44-2.

## ARGUMENT

As an initial matter, this Motion to supplement the record can only have been brought by the non-WCAI Contemnors, as WCAI's appeal has been dismissed by the Second Circuit. Dkt. 161. Regardless of which entity is prosecuting this Motion, the Court should deny it in its entirety as it fails to cite facts or law remotely justifying the relief sought.

5

## I. THE COURT SHOULD DENY THE CONTEMNORS' REQUESTS FOR SUPPLEMENTATION OF THE RECORD, RECONSIDERATION, AND FURTHER PROCEEDINGS REGARDING THE FEE ORDER

The Contemnors have not met the heavy burden required to obtain supplementation of the record, reconsideration, and further proceedings regarding the Fee Order. As the Contemnors themselves claim, the Fee Order is a final order subject to appeal. *See* Dkt. 157 (Notice of Appeal of Fee Order). Therefore, the Contemnors' putative motion to reconsider and supplement the record with respect to the Fee Appeal is a request for relief from a final order under Rule 60(b).[1] Motions under Rule 60(b) are granted "only upon a showing of exceptional circumstances" where there is, among other things, "'highly convincing' evidence in support of the motion." *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 266 (S.D.N.Y. 2011) (citations omitted), *reconsideration denied* (Aug. 10, 2011), *aff'd*, 476 F. App'x 913 (2d Cir. 2012); *see also* Dkt. 33 at 8 (WCAI citing *Feldman* in opposition to Bank Mutiara's motion under Rule 60(b)). No such "exceptional circumstances" or "highly convincing evidence" exists here. As demonstrated below, the Contemnors' wild allegations are untrue and unproven, and even if they were true, would not warrant relief under the doctrine of unclean hands.

---

[1] As a technical matter, this Court lacks jurisdiction to order relief regarding the Fee Order as "the docketing of a notice of appeal ousts the district court of jurisdiction except insofar as it is reserved to it explicitly by statute or rule." *See Toliver v. Cty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (citation and quotation marks omitted). The Motion should probably have been lodged under Rule 62.1, which permits a district court considering a motion that it lacks jurisdictional authority to grant due to a pending appeal to make an "indicative ruling" as to whether it "would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1; *see also* 12 Moore's Federal Practice 3D, § 62.1.10[3] (3d ed.) (A "substantial issue" under Rule 62.1 is limited to where "the movant's right to relief is clear and . . . the motion should be granted if the court of appeals remands for that purpose," but the district court wishes to "preserve [its] flexibility . . . on remand"). As Rule 62.1 does not prescribe its own standard, the applicable one remains that which would apply to a motion for a *non*-indicative ruling—namely, the standard under Rule 60(b).

### A. The Contemnors' Allegations Against Bank Mutiara And Quinn Emanuel Are Unfounded

The accusations the Contemnors present as "facts" are unfounded. The Contemnors claim that "the report of expert witness Peter Barrie Brown, read in conjunction with the fraudulent financial statement of Bank Mutiara which is already in the record, unequivocally shows that Bank Mutiara and its counsel [Quinn Emanuel] have jointly engaged in illegal money laundering activity." Manuel Decl. ¶ 3. They argue that "Bank Mutiara knowingly brokered the laundering of $40 million that [third parties] extracted from their failing bank; . . . retained $8 million of the laundered [funds] as its 'fee' for the money transfers; and . . . then transferred the $8 million of the laundered money to Quinn Emanuel—purportedly as the 'Bank's Lawyer' . . . but in fact as a 'Legal Fee' for the law firm." Manuel Decl. ¶ 11. The Contemnors' claims of purported wrongdoing are at times difficult to follow, but it appears they combine (i) an expert report containing the phrase "money laundering" concerning incidents in 2006, *id.* Ex. 1, (ii) a few lines in a publicly-available 2014 financial report, *id.* Exs. 2-3, and (iii) letters concerning a completely separate bank which nowhere mention Bank Mutiara, *id.* Exs. 4-5, to somehow reach an accusation that a settlement payment in a London arbitration brought by FBME against Bank Mutiara constituted "money laundering" by both Bank Mutiara and Quinn Emanuel. The Contemnors' thinly pled conspiracy theory is incorrect.

The expert report the Contemnors cite in no way supports an allegation of recent money laundering by either Bank Mutiara or Quinn Emanuel. The arbitration and the Brown report concerned "a series of transactions entered into . . . *in November 2006*," Manuel Decl., Ex. 1, ¶ 19 (emphasis added), concerning the management of Bank Century—the predecessor to Bank Mutiara. These transactions in no way involved either Quinn Emanuel or Bank Mutiara's current owners and management. This decade-old activity cannot support the Contemnors'

contention that "money laundering activity at the bank . . . began in 2006-2008 *and continued through 2015*," Manuel Decl. ¶ 6 (emphasis added), or the canard that the funds transferred to Quinn Emanuel in 2014 were somehow a "fee" for executing those transactions. Manuel Decl. ¶ 11 (emphasis added).

The Contemnors' mischaracterization of certain lines in Bank Mutiara's FY 2014 financial report also fails to support a claim of "money laundering." *Id.* ¶¶ 5–12, 15–18, 20. Bank Mutiara's publicly-available audited financial statements (prepared under the accounting rules and laws of Indonesia) report the 2014 payment for what it is—the settlement of an arbitration claim. But even if the letter the Contemnors submit is correct (which Bank Mutiara has no reason to believe)[2] and FBME in fact now claims it never received funds from the settlement of the 2014 arbitration, *see* Manuel Decl., Ex. 4, or even if Bank Mutiara's payment to Quinn Emanuel *had* in fact constituted a fee (which it did not), this *still* would not constitute money laundering. If the Contemnors disagree with the characterization of the transaction contained in Bank Mutiara's FY 2014 report, they may seek redress under Indonesian securities law for that purported inaccuracy. But it is unclear how "money laundering" even enters the discussion.

The actual facts surrounding the Barrie report and the 2014 transfer are exactly as counsel to Bank Mutiara explained to the Court:

---

[2] Indeed, the Contemnors appear to be conflating a branch of FBME with the bank itself. *Compare* Manuel Decl., Ex. 4 (letter from "Special Administrator of FBME Bank Ltd (Cyprus Branch)" claiming the Cyprus branch never received settlement funds) *with* FBME History, https://www.fbme.com/en/fbme-bank/fbme-history (last visited Dec. 16, 2016) (noting that in 2003, FBME Bank relocated from the Cayman Islands to Tanzania and "its Cyprus banking operations became a branch of FBME Bank, Tanzania."). According to the Barrie report, Manuel Decl., Ex. 1, it was FBME Bank Ltd., and not its Cyprus branch, that was party to the arbitration.

> MR. GREENWALD: So Bank Mutiara was sued by [FBME], a Middle Eastern bank, in a London private arbitration relating to a transaction done by the prior corrupt owner of Bank Mutiara. In that arbitration Quinn Emanuel's London office represented Bank Mutiara. And one of the documents used in the arbitration was an expert opinion by a banking expert saying that the transaction between the Middle Eastern bank and the prior owner, corrupt owner had indicia of money laundering. That was the defense of Bank Mutiara. The case then settled. And the settlement was paid by Bank Mutiara sending the settlement proceeds to Quinn Emanuel's client trust account, the way settlements are frequently done, and then Quinn Emanuel paying the plaintiff in the arbitration. Bank Mutiara then disclosed in its financials we had this arbitration, we settled it for $8 million, and we settled by sending it to Quinn Emanuel's London office for payment. That ends the case.

Nov. 3 H'rg Tr. at 12:4-20. The Contemnors have failed to plausibly dispute this account. And their speculation and innuendo comes nowhere close to providing the "highly convincing evidence" necessary under Rule 60(b) to justify revisiting the Fee Order, whether through supplementation of the record, reconsideration, or otherwise.

### B. The Contemnors' Allegations Cannot Constitute "Unclean Hands" As A Matter Of Law

Even if Bank Mutiara and Quinn Emanuel *had* committed the acts the Contemnors complain of (which they did not), those acts would still not justify the application of the unclean hands doctrine. "The unclean hands doctrine proscribes equitable relief when, *but only when*, an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" *Henderson v. United States*, 135 S. Ct. 1780, 1783 n.1 (2015) (emphasis added) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)); *see also Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) ("[M]isconduct . . . unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.") (citation and quotation marks omitted). The cases cited by the Contemnors themselves only reiterate this point. *See, e.g.*, Mot. at 2 ("The 'unclean hands' doctrine 'closes the door of a court

of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief . . . .* ") (emphasis added) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)); Mot. at 3 ("[Equity] require[s] that [parties] shall have acted fairly and without fraud or deceit *as to the controversy at issue*.") (emphasis added) (citing *Keystone Driller Co.*, 290 U.S. at 245).

None of the November 2006 transactions described in the Brown report, Manuel Decl., ¶ 14, the purported "fraudulent misreport[ing]" in Bank Mutiara's FY 2014 financial statements, *id.*, ¶ 7, or the alleged "joint[] . . . money laundering activity," *id.*, ¶ 3, bear *any* relation—certainly not an "immediate and necessary" one—to this action, let alone to the Fee Order. The Contemnors attempt to counter this by claiming that Bank Mutiara's transfer of $8 million was related to this action because it was executed "at precisely the time that Bank Mutiara was pressing its motion for expanded contempt and sanctions," Mot. at 3, and "WCAI could easily and successfully have rushed to the courts in London to freeze the $8 million in satisfaction of a small part of their judgment, $3.6 million of which then could have been forwarded to this Court." Mot. at 4. But WCAI's purported ability to seek a freeze of funds elsewhere, with respect to transfers among other parties, has no immediate and necessary bearing on this action to enforce a Mauritian judgment, and certainly has no relation to the Fee Order, which was entered months later.[3] Thus, even if the allegations regarding Bank Mutiara and Quinn Emanuel were true (and they are not), they are completely irrelevant to this action and the Fee Order, and

---

[3] By the Contemnors' theory, *any* transfer by Bank Mutiara to parties other than them constitutes "fraud" because Bank Mutiara owes them first. It is difficult to square this notion with the Contemnors' continued expenditures on behalf of Mr. Liegey and prosecution of litigation in Singapore while the Contempt Order remains in effect. It is also difficult to square the Contemnors' allegations that "WCAI could easily and successfully have rushed to the Courts in London to freeze the $8 million" with WCAI's role as a "a shell entity with little more than a United States address." Contempt Order at 8.

10

cannot justify revisiting that order pursuant to Rule 60(b). As the Contemnors' allegations are facially insufficient to justify invoking unclean hands, the Court should deny the Contemnors' motion.

### C. The Court Has Rejected This Argument Previously In This Case, And The Contemnors Give No Reason Why It Should Succeed Now

The Contemnors' bid to invoke the unclean hands doctrine is the latest instance in a pattern; throughout this litigation, they have repeatedly attempted to tar Bank Mutiara (and now Quinn Emanuel) to distract from their own failure to comply. But the Contemnors have provided no reason why their allegations of Bank Mutiara's purported misbehavior with respect to the FBME arbitration differ from the other purported misdeeds they have alleged in the past, and should not be rejected for similar reasons.

The Contemnors' arguments must again be rejected as irrelevant in accordance with the law of this case. The Contemnors' previously raised this issue in opposing contempt. *See, e.g.*, Dkt. 119 at 10-12 ("The Motion For Contempt Should Be Denied Because Of Defendant's Unclean Hands"). The Court previously found that the unclean hands doctrine only applies to the matter at issue:

> Mr. Manuel: But there most certainly is an issue of unclean hands in this case, and Bank Mutiara is and has been widely recognized as a corrupt institution that has systematically defrauded and corrupted creditors and other entities that it has dealt with.
> The Court: *Not in this matter.*

Contempt Order at 8-9 (quoting June 17, 2015 Hr'g Tr. 59:25-60:05) (emphasis added). The Court further found that the Contemnors' "rhetoric concerning Bank Mutiara's business practices" elsewhere was an attempt to "steer the Court's attention away from WCAI's noncompliance." Contempt Order at 8-9. In the same vein, the Second Circuit has already rejected the Contemnors' unclean hands arguments, "find[ing] them without merit." *Weston*,

2016 WL 3472375, at *3 (2d Cir. June 24, 2016); *see also* Contempt Appeal Dkts. 115-16 (Contemnors' Opening and Reply Briefs, each arguing that Bank Mutiara's conduct in other actions should have barred the imposition of contempt). The Court should not revive an argument both it and the Second Circuit have already rejected.

## II. THE MOTION'S REQUESTS FOR RELIEF FROM THE CONTEMPT ORDER SHOULD BE DENIED

At the November 3, 2016 hearing, the Contemnors requested and were granted permission to show that they are unable to comply with the Contempt Order (in addition to their request for relief regarding the Fee Order). *See* Nov. 3, 2016 Hr'g Tr. at 4:1-7 (Mr. Manuel: "What we would like to do is set up a schedule for addressing the two matters that we believe are appropriately subject for remand here . . . [o]ne is the issue of ability to pay and the other is the issue of the matters raised in connection with the fee appeal and, in particular, our request for reconsideration of the ruling on that regard."). While the Contemnors' Notice of Motion requests that the Court "vacate the expanded contempt order and sanctions," Dkt. 166, the balance of the Contemnors' pleadings provide no evidence for, and indeed do not address, the Contemnors' purported inability to comply with the Contempt Order. And the Contemnors' requests for supplementation, reconsideration, and further proceedings "in connection with the fee appeal" have no bearing on the separately-granted, separately-appealed, and already affirmed Contempt Order. As the Contemnors have failed to meet their "burden of producing evidence of [their] inability to comply . . . [and] the burden of proving *plainly and unmistakably* that compliance is *impossible*," *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (emphasis in original) (citations omitted), their motion to vacate the Contempt Order and sanctions must be denied.

**CONCLUSION**

The Contemnors have failed to carry their burden in demonstrating their entitlement to relief. They have failed to show any misconduct at all, let alone misconduct bearing the necessary relation to the Fee Order for the doctrine of unclean hands to apply; they have failed to prove their own inability to pay the sanctions under the Contempt Order. Accordingly, Bank Mutiara respectfully requests that the Court deny the Contemnors' motion to supplement the record, conduct further proceedings, and vacate the Contempt Order and sanctions relating thereto.

Dated: December 16, 2016
   New York, New York

Respectfully submitted,

/s/ *Marc L. Greenwald*

Marc L. Greenwald
Andrew P. Marks
Daniel R. Koffmann
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
marcgreenwald@quinnemanuel.com
andrewmarks@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Counsel for Defendant*
*PT Bank Mutiara, Tbk*