UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WESTON CAPITAL ADVISORS, INC.,

        Plaintiff,      Civil Action No. 13-cv-6945 (PAC)

   - against -

PT BANK MUTIARA TBK

        Defendant,
------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO SUPPLEMENT RECORD,
## CONDUCT FURTHER PROCEEDINGS,
## AND VACATE THE EXPANDED CONTEMPT ORDER AND SANCTIONS

  Plaintiff Weston Capital Advisors Inc. (WCAI)[1] submits this Reply Memorandum in support of its motion to supplement the record, conduct further proceedings, and vacate the expanded contempt order and sanctions, including the award of approximately $600,000 in legal fees to Bank Mutiara's counsel, Quinn Emanuel Emanuel Urquhart & Sullivan, LLP.

## PRELIMINARY STATEMENT

  This memorandum focuses on the issue of the unclean hands of PT Bank Mutiara Tbk (Bank Mutiara) which, as shown in several prior submissions in this case, is the most corrupt bank in the most corrupt country in South East Asia. The picture with respect to unclean hands has now come dramatically into focus, and we respectfully submit that the time has come for the Court to send this criminal enterprise packing and vacate the contempt order against WCAI and nine other contemnors, including the immense sanction that the Court previously imposed.

---

[1] Bank Mutiara and Quinn Emanuel suggest that the proper moving parties are the nine *non*-parties against which this Court entered the expanded contempt order. But the Court's order did not make them parties, and the dismissal of WCAI's appeal does not preclude WCAI from addressing its motion to this Court. WCAI is the sole party plaintiff before this Court; it is the party that raised the unclean hands argument; and the contemnors on the expanded contempt order simply join the plaintiff in the present application.

1

## I. DEFENDANTS' CONTENTIONS ARE UNSUPPORTED.

Bank Mutiara and Quinn Emanuel make four fact-based contentions that simply underscore the importance of a supplementation of the record before this Court:

1. They contend that there are no "exceptional circumstances" here to invoke the equitable power of the Court under the unclean hands doctrine. To the contrary, we have presented to the court uniquely exceptional circumstances, with very specific documentation, of the fraudulent transfer *in December 2014* of GB£5,000,000/US$8,000,000[2] to Quinn Emanuel by Bank Mutiara – the exact sum that Bank Mutiara's expert described as the Bank's "fee" or share of the $40,000,000 of the money that the expert unequivocally described as laundered funds. The $8,000,000 payment to Quinn Emanuel happened at precisely the time that:

    (i) Bank Mutiara was subject to two judgments – readily enforceable in Mauritius's sister British Commonwealth law courts in London – which would have entitled FBME and WIARCO to freezing and enforcement orders for the recovery of what, at that time, were over $83.5 million of judgments entered by a sister Commonwealth country court; and

    (ii) Bank Mutiara was demanding the return of $3.623 million upon the order of this Court – a sum that FBME/WCAI would and could easily have taken out of the $8,000,000 partial judgment recovery, thus bringing the protracted issue in this Court to a close two years ago.

2. Bank Mutiara and Quinn Emanuel suggest that plaintiff has not submitted "highly convincing" evidence of the fraud and money laundering at issue on this application. To

---

[2] The payment from Bank Mutiara to Quinn Emanuel in London was in British pounds, but Bank Mutiara's expert, Peter Barrie Brown, referred to most of the transactions he reviewed in U.S. dollars. In the remainder of this memorandum, we will simply refer to the US$8,000,000 amount for convenience.

the contrary, our evidence of fraud is as convincing as one could conceive, including the submission to this Court almost two years ago of a declaration that directly establishes the fraudulent deception and the reliance of the plaintiff upon that deception in this case. This is fraud in its pristine form. We have also established the compelling evidence, presented in great detail by Bank Mutiara's own expert in the LCIA, Peter Barrie Brown ("Brown Report") and summarized in our earlier submissions, that the $8,000,000 was part of a $40,000,000 money laundering scheme.

3. Bank Mutiara and Quinn Emanuel deceptively assert that the money laundering is unrelated to this case and that the Brown Report concerned transactions entered into from November 2006 to December 2008. However, the Brown Report itself specifically highlights the fact that $8,000,000 of the $40,000,000 laundered buy Bank Mutiara was supposedly retained by that bank as its 20% "fee" for the money laundering services. Then, within weeks after the Brown Report was filed, the uncontroverted record shows that Bank Mutiara then transferred the same $8,000,000 (in British pounds) to Quinn Emanuel, deliberately sidestepping British and U.S. anti-money laundering laws and a U.S. Treasury Notice of Finding Order not to transact in U.S. dollars.

## II. BANK MUTIARA AND QUINN EMANUEL'S EVASION AND WITHHOLDING OF CRUCIAL DOCUMENTS.

Perhaps the most stunning aspect of the Bank Mutiara/Quinn Emanuel memorandum is their evasive failure to produce the documentation that would unequivocally demonstrate their wrongdoing – or conceivably absolve them. We specifically invited them, most recently in our opening memorandum to this Court, to produce the specific documents that would either establish or disestablish the funds transfers referenced by Marc Greenwald. Those documents are: (1) the October 16, 2014 Settlement Agreement among Bank Mutiara, the Indonesian LPS, FBME Bank Ltd, and Saab Financial (Bermuda) Ltd., documented by Quinn Emanuel representing both Bank Mutiara and Saab Financial (Bermuda) Ltd.; (2) the documentation (on both sides) of the

December 2, 2014 transfer of BP£5,000,000/US$8,000,000 from Bank Mutiara to Quinn Emanuel's account in London, (3) the alleged transfer of the same amount from the Quinn Emanuel client funds account to the account of FBME Bank Limited, and (4) any subsequent transfer from FBME Bank Limited to a third party, such as a Saab-controlled entity or a law firm. This is particularly important because counsel's assertion has been directly contradicted by the current and former Special Administrator of FBME Bank (Cyprus) Limited, and will soon be further contradicted by by the current and former Special Administrator of FBME Bank Limited (Tanzania), stating that no such payment was ever received.[3] (See Exhibits 4 and 5 to the Manuel Declaration.)

If those documents in any way supported what Bank Mutiara and Quinn Emanuel are telling this Court, they most certainly would have been produced. But, in a masterpiece of evasion, Bank Mutiara and Quinn Emanuel make a vague, completely unsupported denial of plaintiff's contentions, while producing *none* of the documents which could help dispose of the entire matter. The Bank Mutiara/Quinn Emanuel memorandum makes the most general, vague possible denials, without any declaration or supporting documentation whatsoever – which fully establishes that the documentation would not support the Bank Mutiara/Quinn Emanuel position and in fact is perhaps the most compelling evidence of exactly what plaintiff contends.

### III. DEFENDANTS' EVASION IS FURTHER ESTABLISHED BY THEIR SEPARATE ENTITY ARGUMENT.

A further prime example of Bank Mutiara and Quinn Emanuel's evasion appears in footnote 2 at page 8 of their memorandum, where they assert that plaintiff here is "conflating a branch of FBME with the bank itself." Bank Mutiara and Quinn Emanuel have in fact asserted that the $8,000,000 was paid to the "claimant" in the LCIA arbitration. So, all that Bank Mutiara and Quinn

---

[3] At the time of the FBME/Bank Mutiara settlement in the LCIA, both the Cyprus branch and the Tanzanian parent were under either statutory management or administration. Neither was consulted or had knowledge of this settlement, and there is no contrary suggestion by Bank Mutiara and Quinn Emanuel.

Emanuel would have to do is to show that the $8,000,000 was in fact sent to the purported separate entity, FBME Bank Limited, referenced in the footnote.[4] Instead, Bank Mutiara and Quinn Emanuel refer to the conflation of entities *without making any evidentiary submission to show that the $8 million dollars was in fact paid to FBME Bank Limited*. We know from the Special Administrator of FBME Bank Ltd. (Cyprus), who has already rebutted the assertion of a transfer to FBME (Cyprus), that no such payment was made to FBME Bank Ltd., and a supporting statement will be submitted to this Court soon.[5] Furthermore, we note that the Brown Report specifically refers to multiple acts of money laundering at FBME Cyprus, the only legal counterparty to Bank Mutiara Bank Mutiara and Quinn Emanuel's silence in the face of these facts constitutes an admission by silence, as we stated with case citations to the Second Circuit.

## IV. DISCOVERY IS ESSENTIAL TO COMPLETE THE RECORD.

This is a well-supported application to open and supplement the record with respect to defendant's unclean hands. It is a perfect example where discovery is essential and should be ordered by the Court, for three reasons. First, it is in the very nature of the fraud perpetrated by Quinn Emanuel and Bank Mutiara that vital Information has been withheld. We have managed to uncover substantial crucial information, certainly sufficient to proceed, but it is certain that there

---

[4] There is nothing secret or privileged about such information, which Bank Mutiara and Quinn Emanuel have made a centerpiece of their [fraudulent] public disclosure in the Bank Mutiara financial statements and have also discussed without objection before this Court and the Second Circuit, as, for example, in the passage from the Marc Greenwald statement in open court that the $8,000,000 payment was made to the "claimant" in U.S. dollars, contrary to the U.S. Treasury Department order.

[5] The reality is that FBME Bank Limited (Cyprus) was the center of the bank's operations and money flows, and the report from the Cyprus Administrator is definitive. The Brown Report states in paragraph 181:

> On 15 July 2014, the Financial Crimes Enforcement Network (FINCEN), an Agency of the US Treasury, published a finding that "FBME Bank Ltd…..is a Financial Institution of Primary Money Laundering Concern". The Notice records the history of the Bank since it was founded in 1982, initially in Cyprus, from 1986 in the Cayman Islands and since 2003 in Tanzania **but continuing to undertake more than 90% of its business from its branch in Cyprus**. (Emphasis added.)

is much more below the surface that has been secreted by these fraudsters. Second, this Court's longstanding stay order, which backfired and has actually precluded plaintiff from raising funds and collecting share transfer fees of over $6,000,000 incurred in December 2014 from the delivery of US$112,000,000 of FGFL Preference Shares to Bank Mutiara, should be partially lifted in these circumstances. Third, the fact that Bank Mutiara and Quinn Emanuel are very specifically withholding the essential documents that would either prove or disprove the payment by Bank Mutiara to Quinn Emanuel of the $8,000,000 of laundered funds as a legal fee, and not as the proceeds of settlement that Quinn Emanuel falsely asserts got paid to FBME Bank Ltd, makes it essential that we receive that documentation forthwith.

Bank Mutiara and Quinn Emanuel would seek to relegate the plaintiff to the courts and regulators in Indonesia (not Singapore, where actions against Bank Mutiara have already been lodged for over a year), which has the most corrupt legal system in Southeast Asia. They go on to state, without any support whatsoever, that the Bank Mutiara financials were prepared under the accounting rules and laws of Indonesia. This is typical of the attempt by Bank Mutiara and Quinn Emanuel to evade any proper evidentiary submission to this Court. First, the assertion is made not by a declaration, but in a memorandum of law. Second, the memorandum is submitted by attorneys who have no knowledge of the asserted facts. Third, the record already demonstrates that the Bank Mutiara financials are fraudulent – except insofar as they show that the $8 million was paid as "legal fees" which could only have gone to Quinn Emanuel.

## V.  THE TEST FOR UNCLEAN HANDS HAS BEEN MET.

Referencing the authorities cited by plaintiff, Bank Mutiara states that "the 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief . . . .* " *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)); and "[Equity] require[s] that [parties] shall have acted fairly and without fraud or deceit *as to the controversy at issue*."

6

(emphasis added) (citing *Keystone Driller Co.*, 290 U.S. at 245).  We have shown that the fraud and money laundering of Bank Mutiara and Quinn Emanuel are directly tied, in time and in relevance, to the proceedings in this Court.  The "controversy at issue does not refer to a single case; it refers by its terms to a "controversy."

### VI.  WITHOUT DISCOVERY, THIS COURT CANNOT ADDRESS THIS MOTION ON SUBSTANTIVE GROUNDS.

There is no need for this Court to decide this motion immediately, as it suggested it would do at the November 3, 2016 hearing, before the motion was even filed. These are matters of great import that require discovery and deliberation. Even if this Court were to continue to deny any discovery to the plaintiff regarding this newly un covered, special matter that goes to the heart of unclean hands and the fee application of Quinn Emanuel, we expect over the next few months to receive information from the various legal authorities in several of the half-dozen jurisdictions where this matter is being investigated. The investigative authorities will not be precluded from obtaining discovery, and they will use their power to get to the bottom of this fraudulent, criminal scheme once and for all. When they do, the information will become public and we will be able to disclose that information to this Court. But currently the plaintiff is precluded under "tipping off" rules from disclosing any findings with regard to acts of money laundering in the jurisdictions that are now considering these issues.  There is simply no reason why this matter has to proceed over the course of a few days when it is recognized by the investigative authorities in several jurisdictions as a matter of great import, in which they will get to the bottom of the matter once and for all.

Indeed, if discovery is denied by this Court at this time, then this Court is in no position to make any ruling with respect to the substance of the issues of money laundering and fraud. Those issues, as indicated above, are being addressed in other forums and by other authorities. This Court should not superimpose a decision rendered without discovery and a full record upon a

7

situation of this magnitude, where the record is being assembled by persons who have, or are in the process of acquiring, all relevant facts, without the obstructionist tactics of Bank Mutiara and Quinn Emanuel.

## **CONCLUSION**

Bank Mutiara and Quinn Emanuel seek euity with filthy hands. This plaintiff and its counsel should take nothing, and should return what they have stolen.

WCAI – victimized by the huge fraud, theft and money laundering in London – and nine other contemnors should not continue to be victimized with one of the most brutal contempt orders and sanctions in history. They should, instead, be assisted in collecting every possible, available dollar on the legitimate judgments issued in their favor by a respected English law court from Mauritius.

Dated: New York, New York
December 23, 2016

Respectfully submitted,
*Charles B. Manuel, Jr.*
Charles B. Manuel, Jr. (CM3020)
MANUEL & ASSOCIATES, LLP
1 Penn Plaza, Suite 2527
New York, New York 10119
T: (212) 792-0044
F: (212) 563-7108
CBM@Manuel-law.net

Attorneys for Petitioner
Weston Capital Advisors, Inc.