# Manuel & Associates, LLP     ATTORNEYS AT LAW

One Penn Plaza • Suite 2527 • New York, New York 10119
T: 212.792.0044 • F: 212.563.7108

Charles B. Manuel, Jr.
C: 917.699.9559
cbm@manuel-law.net

December 13, 2016

*1/10/2017*

Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
By ECF

*[Handwritten annotation by Judge Crotty]: Rather than continuing its efforts at contumacious avoidance, the plaintiff ought to comply with the Court's order. There is no need for another motion to make the same arguments previously unveiled, and rejected by the Court. The request for a conference and motion is DENIED. So ordered. Paul A. Crotty USDJ*

**Weston Capital Advisors, Inc. v. PT Bank Mutiara Tbk**
13-cv-6945 (PAC)

Dear Judge Crotty:

Plaintiff Weston Capital Advisors, Inc. ("WCAI") submits this letter for a pre-motion conference for its anticipated motion requesting that the Court, on grounds of comity, give recognition to Plaintiff and its parent's setoff under the laws and judgments of Mauritius, including a binding Mareva injunction and Norwich Pharmacal order.[1] The motion is ready for filing.

On our current application, we ask that the courts of the United States show respect, consideration and comity for the laws and for judgments affirmed by the highest court of Mauritius. Specifically, the accompanying opinions of Thierry Koenig, one of the most senior partners at the largest law firm in Mauritius and the continent of Africa, and of two retired Chief Justices of the Supreme Court (the highest court) of Mauritius: Ariranga Pillay and former Chief Justice Y.K.J. Bernard Sik Yuen, G.O.S.K. (Exhs. 1-3 hereto), show that: (1) the offset is strict, absolute, automatic and irreversible under the law of Mauritius,[2] (2) a post-judgment worldwide Mareva injunction was issued June 29, 2015 by the courts of Mauritius in the amount of

---

[1] Pursuant to Fed. R. Civ. P. 44.1, Plaintiff hereby gives notice of its intent to raise issues regarding Mauritian law.
[2] The Koenig opinion concludes (¶ 27) that the application of the setoff doctrine in this case is automatic under Mauritius law: "The set-off operates *'ipso jure.'* It is **automatic** and **obligatory**, depending solely upon the law. This conception emphasizes the desire to avoid the necessity of two separate payments . . . ." (Emphasis added.)

1

US$120,000,000.00, which strictly prohibits the transfer to Bank Mutiara or J Trust Co., Ltd. of any money collected on the FGFL judgment globally, and (3) the penalty in Mauritius for a violation of the Mareva injunction and disregard of the offset is criminal.

The U.S. Supreme Court's "classic statement" of international comity was made in *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895):

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

As will be demonstrated in our memorandum of law, United States and New York law fully comport with the law of Mauritius with respect to the offset asserted herein. The courts in this circuit have specifically upheld setoffs of foreign judgments.[3] In *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Dem. Repub.*, 10-cv-5256, 2016 WL 958640 at *2-3 (S.D.N.Y. March 8, 2016) (KMW), virtually on all fours with the case at bar, the court applied the setoff doctrine to a foreign judgment that had not yet been recognized in the United States, stating:

> New York has codified the common law right to setoff in N.Y. Debtor & Creditor Law ("DCL") § 151. Section 151 provides that every debtor has the right "to set off and apply against any indebtedness, whether matured or unmatured" any amount owing from the debtor to the creditor, so long as the debts are mutual. The debtor is entitled to invoke this right of set off upon the happening of one of the enumerated statutory events, including "the issuance of any execution against any of the property of a creditor" or "the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of a creditor." DCL § 151.
> Courts have interpreted the right conferred by DCL § 151 broadly. (*Id.* at 3, citing *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 582 (1981) ("[B]y enacting section 151 of the Debtor and Creditor Law, the Legislature intended to 'cover the field' in terms of the ... right of setoff vis-à-vis the various enforcement devices."); *United States v. BCCI Holdings (Luxembourg), S.A.*, 941 F. Supp. 180, 187 (D.D.C. 1996) (describing the New York statutory right of set off as "jealously protected" and enjoying a "cherished status").

---

[3] The U.S. courts do not, however, extend comity to the courts of Indonesia. In *In re Perry H. Koplik & Sons, Inc.*, 357 B.R. 231, 240-43 (Bankr. S.D.N.Y. 2006), citing Second Circuit authority and the "stunning" record of corruption of the Indonesian legal system, the court rejected the application of comity to Indonesia.

2

Mr. Koenig continues his opinion at ¶¶ 43-52 (resequenced chronologically):

[O]n the 7th August 2013, the Master and Registrar of the Supreme Court issued a Writ of Enforcement against Bank Mutiara in respect of a judgement delivered on the 15th February 2013, for US$18,292,131. . . . By the time the New York Court decided to correct its own error, in November 2013, the moneys had weeks previously been transferred to Mauritius following a 4th October 2013 attachment/garnishment order (then in effect as issued by the New York Court judgement), and the moneys were by that time in Mauritius, subject to the Mauritius Writ of Execution. Mauritius law governed any disposition of those moneys as of that time. This was even more important as the assets in question were found outside the jurisdiction of the United States of America and subject to a Writ of Execution which pre-dated the New York Court Order of the 4th October 2013, as well as, of course, the 13th November 2013 order calling for the return of the US$3.623,037.83.

On the 29th June 2015, the Judge of the Supreme Court issued a Norwich Pharmacal Disclosure Order and a worldwide freezing order (Mareva injunction) prohibiting Bank Mutiara and its new parent J Trust Co. Ltd (Japan) "whether directly or indirectly, from disposing of and/or dealing with any money or dealing with or diminishing the value of their properties or tangible or intangible assets, including bank accounts, whether in Mauritius or not, up to the value of USD 120 million. . . . [Following] the issue of the worldwide freezing order (Mareva Injunction) . . . Bank Mutiara was prevented from taking any action or doing any act, in Mauritius, whether directly or indirectly, which would be a disobedience of or flouting the said Mareva Injunction which would have for effect of "directly or indirectly from disposing of and/or dealing with any money or dealing with or diminishing the value of their properties or tangible or intangible assets, including bank accounts, whether in Mauritius or not, up to the value of USD 120 million." **Although in personam and addressed to Bank Mutiaria, this Mareva Injunction is applicable to any third party becoming aware of this Order, including FGFL, WCAI, WIARCI and John Liegey.** [Boldface added.] . . . .

In the Singapore case of *Lee Shieh-Peen Clement*, . . . the Court stated "It is a contempt of Court for any person notified of this order to knowingly assist in or permit a breach of this order. Any person doing so may be sent to prison or fined". In *Air Mauritius Ltd*, . . . the Mauritius Supreme Court held that "One may understand why a Mareva injunction should contain and cover all types of assets, whether in the hands of a respondent or any other person in whose hands the assets may be traced". . . .Consequently, FGFL,WCAI, WIARCI and John Liegey, who obviously were under notice of the Mareva Injunction, could not do anything in Mauritius which would aid and abet Bank Mutiara from taking out of the Mauritius jurisdiction any asset, including money from Mauritius and this either directly or indirectly. Any transfer from a bank account held in Mauritius for the account of any one of FGFL,WCAI, WIARCI and John Liegey for any payment to Bank Mutiara, either directly or indirectly to Bank Mutiara, would be a contempt of the Mauritius Mareva Injunction and subject to criminal action.

Our full motion will therefore respectfully request comity for the statutes, judgments, injunctions and orders of Mauritius.

3

Respectfully submitted,
*Charles B. Manuel, Jr.*
Charles B. Manuel, Jr.

Copy: Marc Greenwald, Esq.