USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WESTON CAPITAL ADVISORS, INC.,

        *Plaintiff*,

  -against-

PT BANK MUTIARA, TBK,

        *Defendant*.

------------------------------------------------------------X

13 Civ. 6945 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant PT Bank Mutiara, TBK ("Bank Mutiara") moves (1) to expand the contempt orders currently in effect against Weston Capital Advisors, Inc. ("WCAI"), John R. Liegey, Weston International Asset Recovery Corporation Inc. ("WIARCI"), Weston International Capital Management (Luxembourg) S.A., Weston International Capital (Mauritius) Ltd., Weston International Capital Ltd., Weston Capital Services Ltd., First Capital Management Ltd., First Global Funds Ltd. PCC, Weston International Investments Limited, Arlington Assets Investments Ltd., and Weston International Recovery Co. Ltd. (together, the "Contemnors"); (2) for a temporary restraining order ("TRO"); and (3) for a preliminary injunction, or, alternatively, for a restraining order under New York Civil Practice Law and Rules ("CPLR") § 5229. WCAI has been in contempt of the Court's November 19, 2013 order for failing to return approximately $3.6 million to Bank Mutiara, since March 19, 2014. The remaining Contemnors have been in contempt for the same reason since September 8, 2015. Notwithstanding the coercive sanctions the Court has previously imposed, the Contemnors still remain in contempt.

To secure compliance with the Court's orders, the Court concludes that it must grant Bank Mutiara's motion: a TRO has already been imposed with respect to certain of the Contemnors' assets, described below; a preliminary injunction is now imposed with respect to those assets; and the Court will revest those assets in Bank Mutiara at 21-day intervals, if the Contemnors continue to fail to comply.

## BACKGROUND

In October 2013, the Court granted WCAI's *ex parte* petition to recognize a Mauritian judgment against Bank Mutiara under CPLR Article 53. *See* Dkt. 1, 5. The Court froze Bank Mutiara's assets in Wells Fargo and Standard Chartered and issued a turn-over order, allowing WCAI to collect $3.6 million in satisfaction of the Mauritian judgment. *See* Dkt. 15, 16.

On November 19, 2013, the Court vacated its order recognizing the Mauritian judgment because WCAI failed to notify Bank Mutiara of its Article 53 petition. *See* Dkt. 36, 37. The Court ordered WCAI to return all funds collected within three days (the "Funds Order"). *See id.* But WCAI failed to return the funds, and the Court rejected WCAI's attempts to modify the order and instead repay the funds with bonds. *See* Dkt. 52 at 1 ("Weston's proposal falls well short of satisfying the Court's order to remit $3.6 million that Weston recovered.").

On March 19, 2014, the Court held WCAI in contempt of the Court's "clear and unambiguous" Funds Order. Dkt. 63 at 2; *see Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). The Court, however, declined to hold non-parties Liegey and the remaining Contemnors in contempt. *See* Dkt 63. Following a hearing on July 15, 2014, the Court granted Bank Mutiara's discovery request for an "investigation into any complicit role that John Liegey or other Weston affiliates have played in WCAI's contempt." Dkt. 85 at 2.

On March 18, 2015, Bank Mutiara moved for an order expanding WCAI's contempt to

2

include Liegey and the remaining Contemnors, and requested the Court impose escalating sanctions on the Contemnors. Dkt. 102. On June 17, 2015, the Court held an evidentiary hearing and heard testimony from Liegey, the majority shareholder and director of the Contemnors, and Jabir Udhin, a minority shareholder of the Contemnors. On September 8, 2015, the Court determined that no distinction exists between WCAI, Liegey, and the remaining Weston entities. Dkt. 147. The Court therefore granted Bank Mutiara's request to expand the contempt order and imposed escalating fines to secure compliance with the Court's Funds Order (the "Expanded Contempt Order"). *Id.* On March 16, 2016, the Court granted Bank Mutiara's motion for $598,419.50 in attorneys' fees incurred in connection with pursuing its motion for a contempt order against the Contemnors (the "Fee Order"). Dkt. 155.

On October 7, 2015, the Contemnors appealed the Expanded Contempt Order. Dkt. 154. On August 4, 2016, the Second Circuit dismissed WCAI's appeal for lack of jurisdiction because the Expanded Contempt Order was not a final order under 28 U.S.C. § 1291, and affirmed the Expanded Contempt Order as to the remaining Contemnors. Dkt. 158 at 2, 4. On April 15, 2016, the Contemnors appealed the Fee Order. Dkt. 157. That appeal is still pending, but the Contemnors have not sought a stay of the effectiveness of the Fee Order.

On November 3, 2016, the Court held a status conference where Bank Mutiara suggested staying the accrual of fines pursuant to the Expanded Contempt Order. Exhibit D to the Declaration of Andrew P. Marks ("Marks Decl.") (Dkt. 12-4) at 4:23–5:10. Bank Mutiara also indicated that it was contemplating moving to seek ownership of the Contemnor entities. *Id.* at 6:13–7:4. On November 17, 2016, the Court stayed the accrual of fines, which at that point amounted to $462,108,000. Dkt. 165.

On January 27, 2017, Bank Mutiara moved with respect to three categories of the

Contemnors' property (the "Contemnor Assets"):

1. The Contemnors' "purported judgments against Bank Mutiara, including (i) the purported Mauritian judgment dated February 15, 2013, in *First Global Funds Limited PCC v. PT Bank Mutiara, TKB*, Record No. CO 619/12, at issue in this Action, *see* Dkt. 1-9; (ii) the purported Mauritian judgment dated February 15, 2013, in *Western [sic] International Asset Recovery Company Ltd. v. PT Bank Mutiara, TKB*, Record No. CO 620/12, at issue in WIARCI's separate action, *see* WIARCI Action [14 Civ. 4469 (PAC) (S.D.N.Y.)] Dkt. 1, Ex. 12, and (iii) the purported Mauritian judgment dated May 29, 2015 in *First Global Funds Limited PCC, Weston International Asset Recovery Company Limited, Weston Capital Advisors, Inc. & Weston International Asset Recovery Corporation, Inc. v. PT Bank Mutiara, TBK & J Trust Co., Ltd.*, Case No. SC/COM/PWS/00243/2015, *see* Dkt. 134-3" (the "Judgments");

2. The Contemnors' "purported security instruments in Bank Mutiara, including (i) the purported 150 mandatory convertible bonds ("MCBs") issued on June 16, 2006, each with a principal amount of $100,000 and a maturity date of June 16, 2009, *see* WIARCI Action Dkt. 1 ¶ 9, and (ii) the purported 40 MCBs issued on April 14, 2008, each with a principal amount of $1,000,000 and a maturity date of April 14, 2011, *id.*" (the "Securities"); and

3. "100% of the equity interests in each of the Contemnors (other than, obviously, Mr. Liegey himself)" (the "Equity Interests").

Bank Mutiara's Br. (Dkt. 181) at 5. Bank Mutiara's motion is for (1) an expansion of the Expanded Contempt Order to revest each category of the Contemnor Assets in Bank Mutiara, at 21-day intervals; (2) a TRO to prevent the Contemnors' disposal of the Contemnor Assets; and (3) a preliminary injunction or, alternatively, an order pursuant to CPLR § 5229 for the same purpose. *See* Dkt. 175, 181.

On January 27, 2017, the Court temporarily restrained the Contemnor Assets, set a briefing schedule on Bank Mutiara's motion, and scheduled a hearing on the motion for January 31, 2017. Dkt. 175. On January 31, 2017, prior to the hearing, WCAI filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Dkt. 185. Then, at the hearing, the Court permitted the parties to file additional papers regarding Bank Mutiara's motion.

## DISCUSSION

It has been over three years since the Court ordered WCAI return the $3.6 million that it collected from Bank Mutiara. It has also been almost three years since the Court held WCAI in contempt for failing to comply with that order. And it has been over a year since the Court expanded the initial contempt order against WCAI to the remaining Contemnors and imposed escalating sanctions. The Contemnors remain unfazed. They have not sought to demonstrate to the Court that they cannot comply with the Expanded Contempt Order and have instead offered nothing but hollow hopes that compliance is just around the corner. Given this pattern of contempt, there is no reason to believe the Contemnors' most recent round of assurances that compliance is nearly at hand. Further, it is clear that additional monetary sanctions will do nothing to coerce compliance. As a result, the Court determines that to coerce compliance—and to compensate Bank Mutiara in the only way the Court believes possible at this juncture—the Court must grant Bank Mutiara's motion for a preliminary injunction and for expansion of the Expanded Contempt Order.

### A. Further Expansion of the Expanded Contempt Order

As an initial matter, the Court notes that the Expanded Contempt Order survives WCAI's voluntary dismissal of its claim. *See Jaeger v. Massis*, No. 00-7390, 2000 WL 1678778, at *2 (2d Cir. 2000) (summary order) ("Massis next argues that the district court's dismissal of the action for failure to prosecute essentially mooted the contempt sanction against him. We disagree."); *United States v. Harris*, 582 F.3d 512, 516 (3d Cir. 2009). Next, the Court has already determined that it is appropriate to hold the Contemnors in contempt. Dkt. 147. The question now is whether the Court can order the phased revesting of the Contemnor Assets, if the Contemnors do not comply with the Funds and Fee Orders. The Court concludes it can, and

moreover, that it is necessary to do so.

### 1. Authority to Further Expand the Expanded Contempt Order

Pursuant to Fed. R. Civ. P. 70(b), the Court "may enter a judgment divesting any party's title [to real or personal property within the district] and vesting it in others." The remedies of Rule 70 are available after a judgment is entered. *Da Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 218 (1945). While it is true that money judgments are generally enforced by a writ of execution, Fed. R. Civ. P. 69(a)(1), Rule 70's equitable remedies are appropriate to enforce a money judgment in extraordinary circumstances, *see Nykcool A.B. v. Pacific Fruit Inc.*, 10 Civ. 3867 (LAK) (AJP), 2012 WL 1255019, at *8 (S.D.N.Y. Apr. 16, 2012).

The Expanded Contempt Order is a money judgment. Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). The Second Circuit affirmed the Expanded Contempt Order with respect to all Contemnors, except WCAI. Dkt. 158. And the reason the Second Circuit dismissed WCAI's appeal of the Expanded Contempt Order is no longer applicable as WCAI has voluntarily dismissed the action. Dkt. 158, 185.

Extraordinary circumstances justify the application of Rule 70(b). The Contemnors have not indicated that they have any other assets that can be used to pay Bank Mutiara, and their flagrant and longstanding failure to comply with the Court's orders leaves the Court with no alternative means to effectively coerce compliance (or compensate Bank Mutiara), short of incarcerating Liegey.

The Court also determines that expansion of the Expanded Contempt Order is appropriate pursuant to its "general and inherent equitable powers to coerce compliance with its lawful orders." *See S.E.C. v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456, 458–59 (S.D.N.Y. 2001)

(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Shillitani v. United States*, 384 U.S. 364 (1966); *Sigety v. Abrams*, 632 F. 2d 969, 976 (2d Cir. 1980))._

### 2. The Judgments Are Subject to Revesting

The Contemnors' Judgments against Bank Mutiara are intangible property. *See Shipman Coal Co. v. Del. & Hudson Co.*, 219 A.D. 312, 315 (N.Y. App. Div. 1st Dep't 1927) ("[T]he judgment . . . ought to be treated in all respects like any other debt, chose in action or intangible personal property."), *aff'd* 157 N.E. 859 (N.Y. 1927). Courts look to the law of the state in which the court sits to determine the situs of intangible property. *See, e.g., Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1131 (9th Cir. 2010) ("To determine the location of an intangible right to payment, we must look to California state law."). Under New York law, the situs of intangible property is New York if the owner is present in New York, regardless of domicile. *See Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E.2d 1202, 1210 (N.Y. 2010).

The Court has already determined that it has personal jurisdiction over the Contemnors. Dkt. 147 at 7 n.3. Further, Liegey has been present in this district, including his attendance at the Court's hearing on June 17, 2015. Contemnors WCAI and WIARCI also have offices in this district (rented to them by Liegey's personal holding company), *see* Marks. Decl. Ex. C (Dkt. 182-3) at 31:6–19, 102:10–11, and the Court has pierced the veil between Liegey and the Weston entities, Dkt. 147 at 7. Consequently, the Judgments are located within this district and subject to revesting.

### 3. The Securities and Equity Interests Can Be Subject to Revesting

According to the Contemnors, the Securities and Equity Interests are evidenced by physical certificates. *See* Opp'n (Dkt. 192) at 15. Since the Court has personal jurisdiction over the Contemnors, *see* Dkt. 147 at 7 n.3, the Court may order the Contemnors to deliver those

certificates to this district, even if they are located outside New York,[1] *see Koehler v. Bank of Berm. Ltd.*, 911 N.E.2d 825, 830 (N.Y. 2009); *Commonwealth of the N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 64 (N.Y. 2013). Once the certificates are located in this district, they are subject to revesting pursuant to Rule 70(b).

### B. Preliminary Injunction

A preliminary injunction is appropriate. Bank Mutiara has established: "(1) irreparable harm and (2) . . . a likelihood of success on the merits, . . . plus a balance of the hardships tipping decidedly in favor of the moving party." *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009). Bank Mutiara will be irreparably harmed if the Contemnors are allowed to transfer, encumber or alter the rights relating to the Contemnor Assets, as Bank Mutiara will not be able to obtain the relief it seeks. This will also cause Bank Mutiara significant hardship. And clearly, the Court believes Bank Mutiara has established more than a likelihood of success on the merits.

The Contemnors contend that the TRO and proposed preliminary injunction prevent them from "negotiating the very transactions that would raise the money" to pay Bank Mutiara. Opp'n at 4. To be clear, the Contemnors are free (and indeed encouraged) to continue to negotiate any transactions that may allow them to comply with the Court's Funds and Fee Orders. If the Contemnors can show to the Court—prior to the revesting in Bank Mutiara of the Contemnor Assets—that they will in fact reach a deal that will lead to their prompt compliance with the orders, the Court will lift the injunction. As a result, the Contemnors allege no real damage that they may sustain in light of the preliminary injunction, and so no security is required pursuant to Fed. R. Civ. P. 65(c).

---

[1] This also applies to the Judgments, to the extent they are not intangible property, or are not otherwise within the district.

\*   \*   \*

The Court has considered the Contemnors' remaining arguments and finds them meritless.

## CONCLUSION

The Court preliminarily enjoins the transfer, encumbrance of, or alteration in the rights of the Contemnor Assets, including by diluting or changing the rights accruing to the Equity Interests, or altering the Contemnors' corporate forms. If the Contemnors do not comply with the Court's Funds and Fee Orders—or satisfactorily demonstrate that the preliminary injunction should be lifted—the Court will order the revesting of the Judgments 21 days after issuance of this Opinion & Order ("O&O"); the turn over and revesting of the Securities 42 days after issuance of this O&O; and the turn over and revesting of the Equity Interest 63 days after issuance of this O&O.

Bank Mutiara must submit three proposed orders to the Court by the close of business on Friday, February 17, 2017. The first proposed order shall be for the revesting of the Judgments 21 days after the issuance of this O&O. The second proposed order shall be for the turn over and revesting of the Securities 42 days after the issuance of this O&O. The third proposed order shall be for the turn over and revesting of the Equity Interests 63 days after the issuance of this O&O.

Dated: February 13, 2017  
      New York, New York

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge